Alan Vanderhoff, Cal. Bar No. 138032
Vanderhoff Law Group
750 B Street, Suite 1620
San Diego, California 92101
(619) 299-2050
Attorneys for Mi Arbolito, LLC

Pamela LaBruyere, Esq.
Solomon, Grindle, Silverman, Spinella, APC
12651 High Bluff Drive, Suite 300
San Diego, CA 92130
Attorneys for Point Center Financial, Inc.
(858)793-8500

Ali M.M. Mojdehi, Esq.
Janet D. Gertz, Esq.
Baker & McKenzie
12544 High Bluff Drive, Third Floor
San Diego, CA 92130-3051
(858)523-6280
Attorneys for the Official Mechanics Lienholder Committee

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re: | ) BK. No. 08-04553-LT11 |
|  | ) |
| MI ARBOLITO, LLC, | ) DISCLOSURE STATEMENT TO JOINT |
|  | ) PLAN OF REORGANIZATION DATED |
| Debtor. | ) DECEMBER 31, 2009 |
|  | ) |
|  | ) <u>Confirmation Hearing Date</u> |
|  | ) |
|  | ) Date:    February 8, 2010 |
|  | ) Time:   10:00 a.m. |
|  | ) Dept.   Three |
|  | ) Judge:   Hon. Laura S. Taylor |
| _____ | ) |

Mi Arbolito, LLC, debtor and debtor-in-possession in the above-captioned bankruptcy case (the "Debtor"), Point Center Financial, Inc., and the Official Mechanics Lienholder Committee (collectively, the "Plan Proponents") is providing this Disclosure Statement to each known holder of a Claim or Interest in the Debtor for the purpose of soliciting acceptances of their Joint Plan of Reorganization

1

Dated December 31, 2009 (the "Plan")[1] and to enable Creditors to make an informed decision with regard to voting on the Plan.  A copy of the Plan is attached hereto as Exhibit "A."

## I.   INTRODUCTION

The purpose of this Disclosure Statement is to provide holders of claims against or interest in the Debtor with adequate information to enable them to make informed judgments about the Plan before exercising their right to vote for acceptance or rejection of the Plan.

Acceptance or rejection of the Plan is important and must be made in writing.  An acceptance or rejection of the Plan may only be made by completing the Ballot that accompanies the Plan and mailing it to:

> Alan Vanderhoff, Esq.
> Vanderhoff Law Group
> 750 "B" Street, Suite 1620
> San Diego, California 92101

In order for a vote to be counted, the completed Ballot must be received no later than 5:00 p.m. Pacific Time, January 25, 2010. The Disclosure Statement describes the business background of the Debtor, the events that preceded the filing of this chapter 11 case, and summarizes the terms of the Plan. If the Plan is confirmed by the Court, it will bind all creditors and interest holders regardless of whether an individual claimant voted for or against the Plan and regardless of whether that claimant filed a proof of claim or interest.

The Plan Proponents strongly urge that each recipient carefully and completely review the contents of this Disclosure Statement and the Plan.  Particular attention should be given to the provisions of the Plan affecting or impairing the rights of each holder of a Claim or Interest.  The information contained in this Disclosure Statement has been submitted by the Plan Proponents, unless specifically stated to be from other sources.  The Plan Proponents have authorized no representations concerning the Debtor or its financial affairs, other than those set forth herein.

The Plan is summarized below under the heading "Summary of the Plan," but all summaries are qualified by the terms of the Plan itself, which are in all instances controlling.  You may not rely upon this Disclosure Statement for any purpose other than to determine how to vote on the Plan.  Nothing contained in the Plan or Disclosure Statement shall constitute an admission of any fact or liability by any of the Plan Proponents or any other party, or be admissible in any proceeding involving any of the Plan Proponents or any other party.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein.  Neither delivery of this Disclosure Statement nor any exchange of rights made in connection with the Disclosure Statement or the Plan shall under any circumstances create an implication that there has been no change in the facts set forth herein after the date the Disclosure Statement was prepared.  Although the Plan Proponents believe that the contents of this Disclosure Statement are complete and accurate to the best of their knowledge, information and belief, the Plan Proponents are unable to warrant or represent that the information contained herein is without any inaccuracy.

---

[1]     Many terms, capitalized and otherwise, used in this Disclosure Statement, are defined in the Plan. You should consult the Plan for those definitions.

This is a liquidation plan. Under the Plan, the Debtor's assets will be liquidated and the proceeds will be distributed to the creditors in the order of their priority. Only administrative claimants, United Development Funding Land Opportunity Fund, L.P., Point Center Financial, and, possibly, the holders of mechanics liens will receive anything under this Plan. All other creditors and equity holders will receive nothing under the Plan.

**In particular, Jon Charles Stanton, Alan Stewart, Ernest Hahn, Todd McKinney, Charles Stoopack, Christopher Werner, Stephen Levandowski, Thuy Nguyen, Jim Lackey, and Del Toro Holdings will receive nothing under the Plan. Moreover, unsecured creditors and equity holders will also receive nothing under this Plan.** Those classes that receive nothing under the Plan will be deemed to have rejected the Plan and need not return ballots. The holders of mechanics liens should return ballots accepting or rejecting the Plan. The Plan Proponents, including the Official Mechanics Lienholder Committee, recommend that the holders of mechanics liens vote to accept the Plan.

## II.  BACKGROUND INFORMATION

### A.  Description of the Debtor, the Property, and Reason for Bankruptcy.

The Debtor owns a 14 story, luxury condominium development located at 3415 6th Avenue, on the corner of 6th Avenue and Upas Street in the City of San Diego (the "Property"). The Property has 14 condominium suites, one per floor. Each condominium is approximately 2280 square feet. When the bankruptcy case was filed on May 27, 2008, the project was about 90% completed.

The Debtor borrowed money for the construction of the project from Point Center Financial. The loan was secured by a deed of trust on the Property. The loan was originally contemplated to be in the amount of $13,625,000. However, by a letter dated October 18, 2007, Point Center Financial stated to the Debtor that it was unable to raise the $1,606,387.50 necessary to fully fund the loan. The Debtor had been in negotiations with Point Center Financial for a new loan that would have enabled it to complete the construction and begin selling the Units. However, by a letter dated October 19, 2007, Point Center Financial stated that it would not make a new loan on the Property. Point Center asserts that it was unable to fund the last portion of the loan due, in part, to the Debtor's default under the loan documents by accruing cost overruns in the amount of $4,000,000 that were not disclosed to Point Center in a timely manner. The Debtor disputes that. The Debtor attempted to obtain additional loans from other lending sources, but was unable to obtain additional financing.

Point Center Financial commenced foreclosure proceedings. On February 1, 2008, Point Center Financial recorded a Notice of Default and Election to Sell commencing a foreclosure under its deed of trust. On or about May 2, 2008, Point Center Financial recorded a Notice of Sale against the Property. The sale was scheduled to be conducted on May 28, 2008.

The Debtor was unable to negotiate a consensual resolution of its dispute with Point Center Financial. The Debtor believed that the value of the Property was far greater than the amount owed to Point Center Financial. Accordingly, the Debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code on May 27, 2008 in order to halt the foreclosure sale and to reorganize for the benefit of its creditors and equity holders.

### B.  Debtor's Claims Against Point Center Financial.

On October 25, 2008, the Debtor filed a lawsuit against Point Center Financial stating claims for fraud, interference with economic advantage, breach of contract, and equitable subordination. Among other things, the Debtor alleged that by August of 2007, the project was 80% completed and that the Debtor had purchasers committed to purchase three of the fourteen units. The Debtor believed that the value of the property as that time was approximately $30 million. However, Point Center asserts that the

Debtor did not have an appraisal or other evidence of value at the time. On August 14, 2007, the Debtor requested the final draw of the construction loan. Point Center Financial did not fund the final draw request. Among other relief requested, the Debtor has asked the Bankruptcy Court to equitably subordinate Point Center Financial's lien to the liens and interests of the other secured and unsecured creditors of the Debtor.

Point Center Financial vigorously disputed the above allegations and asserted that it did nothing wrong. Point Center Financial alleged that its actions were excusable because its loan documentation provided for the refusal to fund the final $1 million. Point Center Financial further alleged that the Debtor was in breach under the terms of the Point Center loan due to adding to the construction budget by at least $4 million without obtaining Point Center's consent." The Debtor disagreed with Point Center's position.

In conjunction with the granting of a motion by the Debtor to approve post-petition financing, the Bankruptcy Court ordered that the Debtor's lawsuit against Point Center Financial will be stayed until either the post-petition loan is repaid or the Bankruptcy Court enters an order lifting the stay.

Under the Plan, the lawsuit filed against Point Center Financial by the Debtor will be dismissed without prejudice. The Lender Liability Claims will be assigned to Mr. Cutri and Mr. Martinez and can be used by them defensively in the event that an enforcement action is commenced with regard to their guarantees of the Point Center Financial debt. If the guarantees are fully exonerated by both Point Center Financial and First American Title Company, the Lender Liability Claims will be released.

C. <u>Lien Priority Dispute</u>.

A dispute currently exists between Point Center Financial and the holders of mechanic's liens regarding the priority of their respective liens. The priority of a deed of trust is typically established by the date on which the deed of trust was recorded with the San Diego County Recorder's office. The priority of a mechanic's lien typically relates back to the date of the first work of improvement on the project. All mechanic's liens typically have the same priority with regard to each other. Construction lenders typically ensure that the priority of the deed of trust securing their loan is in first priority by recording their deed of trust prior to any work being performed on the project by contractors or subcontractors.

In the case of the Debtor's Property, work on the project began before Point Center Financial recorded its deed of trust. Excavation was performed on the Property. However, most of the work on the project ceased for a long period of time due to a lawsuit that was filed by an unrelated party and due to the unavailability of construction funds. There was some activity on the Property during the time of relative inactivity including such things as pumping water from the excavation, maintaining fencing, etc. Thereafter, Point Center Financial recorded its deed of trust and construction recommenced in earnest.

The position of the Official Mechanics Lienholder Committee is that the mechanic's liens relate back to the first work of improvement and that the first work of improvement was the excavation. If that is correct, the mechanic's liens would be prior in time to the lien of Point Center Financial's deed of trust and, accordingly, in first lien position on the Property. The Official Mechanics Lienholder Committee also asserts, even if the work of improvement started over at the time that Point Center Financial recorded its deed of trust, most of the advances under the Point Center Financial loan were "optional" advances that would be secured by a lien that would be junior in priority to the mechanic's liens.

The position of Point Center Financial is that (1) cessation of work was a constructive completion of the project which ended the original work of improvement, (2) the activities on the

4

Property during the time of relative inactivity was insufficient to prevent the constructive completion of the original work of improvement, (3) when the construction recommenced after Point Center Financial recorded its deed of trust it was a new work of improvement, and (4) the mechanic's liens only relate back to the new work of improvement. Point Center also asserts that the loan advances were not "optional" within the meaning asserted by the Official Mechanics Lienholder Committee.

Official Mechanics Lienholder Committee has filed a complaint in the Bankruptcy Court seeking declaratory relief regarding the relative priorities of the liens of Point Center Financial and the holders of mechanic's liens. The parties have asked the Bankruptcy Court to decide the priority issues in conjunction with the confirmation of this Plan.

D. Stop Notice Claims.

Some holders of mechanic's liens also assert stop notice claims against Point Center Financial. Under California law, under certain circumstances, a subcontractor on a construction project can serve a notice on a construction lender to pay them directly from any remaining loan proceeds. If there are undisbursed loan proceeds and the subcontractor has satisfied all of the procedural requirements, the lender is required to withhold loan proceeds sufficient to pay the claim of the stop notice claimant.

The stop notice claimants in the Mi Arbolito case were granted relief from the automatic bankruptcy stay to pursue those claims against Point Center Financial in state court. The trial on the stop notice claims is scheduled for February 19, 2010. The Plan does not separately classify the claims of stop notice claimants. To the extent that the stop notice claimants prevail and obtain payment from Point Center Financial prior to being paid under the Plan, Point Center Financial will be subrogated to the claims that they paid.

E. Avoidance Actions.

The bankruptcy laws provide that certain transactions that occurred prior to a bankruptcy case being filed can be avoided or set aside. There are various kinds of avoiding powers including the power to recover preferential payments that were made to creditors just prior to a bankruptcy case being filed, the power to set aside transfers of property that were made with the intent to defraud creditors or for less than reasonably equivalent value, and the power to avoid unperfected liens or liens that were perfected during the 90-day preference period. The Debtor does not believe that there are any potential avoidance actions in this case.

F. Adversary Proceedings.

Currently, there are two adversary proceeding pending in the Bankruptcy Court. One is the lawsuit filed by the Debtor against Point Center Financial discussed above. The other is the declaratory relief action filed by the Official Mechanics Lienholder Committee. The adversary proceeding filed by the Debtor will be dismissed without prejudice as part of this Plan.

G. Post Petition Financing and Completion of the Building.

When the Debtor's bankruptcy case was filed, the Debtor's condominium building was only partially completed. The Debtor brought a motion before the Bankruptcy Court for the approval of a post-petition loan in an amount sufficient to pay for the completion of the building. The motion sought the approval of a loan in the approximate amount of $4.2 million secured by a super-priority lien on the Debtor's property. The motion was opposed by Point Center Financial.

The motion was approved by the Bankruptcy Court by an order entered on December 23, 2008. Following the entry of the order, the loan was fully documented and closed on or about January 15, 2009. The lender was United Development Land Opportunity Fund, L.P. ("United Development").

The post-petition loan was in the original principal amount of $4,422,000. It is secured by a first-priority lien on the Debtor's assets. The post-petition loan bears interest at the rate of 16%. The maturity date of the loan is January 15, 2010. The loan includes an interest reserve in the amount of $675,200 which will be used to pay the interest on the loan during the term of the loan.

Work on the building commenced immediately after funding of the post petition loan. The building was substantially completed in May 2009.

### III. <u>SUMMARY OF THE PLAN</u>

A. <u>Introduction</u>.

This Disclosure Statement contains a brief summary of the Plan and is qualified in its entirety by the full text of the Plan itself, a copy of which is attached hereto as Exhibit "A."  All terms defined in the Plan have the same meaning in this Disclosure Statement unless otherwise stated.  The Plan, if confirmed, will be binding upon the Debtor, the creditors and interest holders.  All creditors and interest holders are urged to carefully read the Plan

B. <u>Overall Summary</u>.

This is a liquidating plan. Under the Plan the Debtor's 14-story condominium building will be sold for approximately $16 million and the sale proceeds will be disbursed to creditors. The only creditors expected to receive anything under the Plan are United Funding, Point Center Financial, the administrative claimants, and possibly the mechanic's lien holders (depending upon the outcome of the priority dispute). No other creditors or equity holders will receive anything under the Plan.

C. <u>Classification and Treatment of Claims</u>.

The Plan provides for the payment of Administrative Expenses and Claims of creditors. Administrative Expenses and priority tax Claims are not classified.  The Plan divides all other prepetition Claims and equity interests into six (6) classes.  The Claims of creditors are classified and treated as follows:

1. <u>Class 1</u>. Class 1 consists of the Allowed Claim of United Development Funding Land Opportunity Fund, L.P. United Development is impaired. The loan default alleged by United Development regarding the non-payment of 2009 real property taxes shall be cured *nunc pro tunc* to the date that the taxes were first due and payable. The default shall be cured by the payment of the real property from the Post-Confirmation Loan Proceeds or through the sale of the Real Property subject to the existing real property taxes. United Development shall receive interest on its claim at the contract, non-default rate. The secured claim of United Development shall be paid in full on the Effective Date from either the Net Sale Proceeds or the proceeds of the Post-Confirmation Loan.

2. <u>Class 2</u>. Class 2 consists of the Allowed secured Claim of Point Center Financial, Inc. Point Center Financial is impaired. In the event that the sale to the Purchaser closes, Point Center Financial will receive the Net Sale Proceeds remaining after the Allowed Claim of United Development, the Allowed Administrative Claims, and the Allowed Senior Mechanics' Lien Claims are paid in full. In the event that the sale to the Purchaser does not close, Point Center Financial will receive title to the Real Property subject only to (1) the lien securing the Post-Confirmation Loan, and (2) the Senior Mechanics' Lien Claims. The relative priority of the liens of Point Center Financial and the Mechanics' Lien claimants will be determined by the Bankruptcy Court as part of the hearing on the confirmation of the Plan. In the event that the Bankruptcy Court determines that the mechanics' liens are junior in all respects to the lien of Point Center Financial, the Real Property will be transferred to Point Center Financial free and clear of all mechanics' liens.

3. <u>Class 3</u>. Class 3 consists of the holders of Allowed Mechanics' Lien Claims. Class 3 is impaired.  The relative priority of the liens of Point Center Financial and the Mechanics' Lien claimants will be determined by the Bankruptcy Court as part of the hearing on the confirmation of the Plan. In the event that the Bankruptcy Court determines that the mechanics' liens are junior in all respects to the lien of Point Center Financial, the Mechanics' Lien claimants will receive nothing under the Plan.  In the event that the Bankruptcy Court determines that the mechanics' liens are senior in whole or in part to the lien of Point Center Financial, the Mechanics' Lien claimants will receive the following treatment under the Plan: (1) <u>Sale</u>. In the event that the sale to the Purchaser closes, the Net Sale Proceeds remaining after the payment of the Allowed Claim of United Development and the Allowed Administrative Claims will be distributed to Point Center Financial and the Allowed Senior Mechanics' Lien Claims in the order of their lien priority. Allowed Senior Mechanics' Lien Claims shall be entitled to interest on their Claims at the rate of ten percent (10%) per annum. Under legal theories advanced by the Committee, it is possible that the Bankruptcy Court could determine that a portion of the secured claim of Point Center Financial is senior to the Mechanics' Lien Claims and a portion is junior to the Mechanics' Lien Claims; and (2) <u>No Sale</u>. In the event that the sale to the Purchaser does not close, Point Center Financial will receive title to the Real Property and the liens of the Senior Mechanics' Lien Claims will remain on the Real Property.

4. <u>Class 4</u>. Class 4 consists of the Claims of Jon Charles Stanton, Alan Stewart, Ernest Hahn, Todd McKinney, Charles Stoopack, Christopher Werner, Stephen Levandowski, Thuy Nguyen, Jim Lackey, and Del Toro Holdings.  Class 4 is impaired. The holders of Class 4 Claims shall receive nothing under the Plan. Class 4 will be deemed to have rejected the Plan.

5. <u>Class 5</u>. Class 5 consists of Allowed unsecured Claims.  Class 5 is impaired. The holders of Class 5 Claims shall receive nothing under the Plan. Class 5 will be deemed to have rejected the Plan. A list of the Class 5 Claims is set forth in Exhibit "D" hereto.

6. <u>Class 6</u>. Class 6 consists of the holders of equity interests in the Debtor. Class 6 is impaired. The Debtor's equity holders shall receive nothing on account of their interests under the Plan. Class 6 will be deemed to have rejected the Plan.

D.  <u>Payment of Administrative Expenses</u>.

Administrative Claims Allowed pursuant to Bankruptcy Code sections 503(b)(1) and 507(a)(1) (and not previously paid), shall be paid in full on the Effective Date from the Net Sale Proceeds or from the proceeds of the Post-Confirmation Loan. Administrative Claims against the Debtor, including the applications of court-approved professionals, shall be filed within thirty days following the entry of an order confirming the Plan.

The administrative claims are expected to be comprised of the legal fees and costs of the Debtor's attorneys and the legal fees and costs of the attorneys for the Official Committee of Lien Holder Claimants. As of December 30, 2009, the unpaid administrative expenses were approximately $600,000.

E.  <u>Executory Contracts</u>.

The Debtor does not believe that there are any executory contracts or unexpired leases. However, if any executory contracts or unexpired leases do exist, they shall be rejected as of the Effective Date. Any individual or entity holding a Claim based upon the rejection of an executory contract or unexpired lease pursuant to this Article must, within thirty days after Confirmation, file a proof of claim with the Bankruptcy Court.  Such Claims shall be treated as Class 5 Claims unless the Bankruptcy Court orders otherwise.  The failure of any such individual or entity to file a proof of claim within the specified time

period will result in the disallowance of such Claim. Class 5 claimants will receive nothing under the Plan.

    F. <u>Means for Implementing the Plan</u>.

        1. <u>Introduction</u>. This is a liquidating plan. The Debtor's real property will be sold for approximately $16 million and the sale proceeds will be disbursed to pay administrative claimants, United Development, Point Center Financial, and, possibly, the holders of mechanics liens. All other creditors and equity holders will receive nothing under the Plan. If the sale of the property fails to close, the bankruptcy estate will obtain a loan in an amount of up to $6 million. The loan proceeds would be used to pay the administrative claimants and United Development. The property would be transferred to Point Center Financial free of all liens except the lien securing the new loan and mechanic's liens that are senior in priority to Point Center Financial.

        2. <u>Dismissal of Claims Against Point Center Financial</u>. Upon entry of a Final Order confirming the Plan, the Lender Liability Claims shall be assigned to the Guarantors and the Point Center Adversary Proceeding shall be dismissed without prejudice. The Guarantors shall assert the Lender Liability Claims only in the event that an action is filed to enforce the Martinez and Cutri Guarantees. The Guarantors shall release the Lender Liability Claims upon the complete exoneration of the Martinez and Cutri Guarantees by both Point Center Financial and First American Title Company. The statutes of limitation regarding the Lender Liability Claims shall be extended to a date that is 60 days after the expiration of the statute of limitations for bringing an action under the Martinez and Cutri Guarantees.

        3. <u>Exoneration of Martinez and Cutri Guarantees</u>. Upon the closing of either the sale of the Real Property or the closing of the Post-Confirmation Loan, the Martinez and Cutri Guarantees shall be exonerated and released by Point Center Financial, except to the extent necessary to preserve certain subrogation rights granted to First American Title Company. Point Center Financial shall not enforce the guarantees itself or assign its rights under the guarantees. Point Center Financial shall use its best efforts to obtain a release of the subrogation rights of First American Title Company. The exoneration and release of the Martinez and Cutri Guarantees by Point Center Financial shall occur automatically upon the entry of the Confirmation Order and shall be the voluntary and consensual act of Point Center Financial as a proponent of the Plan.

        4. <u>Sale of Real Property</u>. The Debtor will sell the Real Property to the Chhatrala Group or such other entity or individuals designated by the Chhatrala Group. The purchase price will be $16 million. The Real Property shall be transferred to the Purchaser free and clear of all liens and encumbrances except for real property taxes. The sale will be approved by the Bankruptcy Court as part of the confirmation of the Plan and shall close on the Effective Date.

        5. <u>Use of Net Sale Proceeds</u>. The Net Sale Proceeds shall be used as follows:

        a) <u>Administrative Claims</u>. Allowed Administrative Claims shall be paid from the Net Sale Proceeds. Each Administrative Claim shall be paid in full on the Distribution Date.

        b) <u>United Funding</u>. The Allowed claim of United Funding shall be paid in full from the Net Sale Proceeds. In the event that the payoff demand of United Funding is disputed by a party in interest, the Bankruptcy Court shall determine the Allowed amount of the claim of United Funding. If the payoff demand of United Funding is not disputed, the Allowed claim of United Funding shall be paid in full on the Effective Date. If a party in interest disputes the payoff demand of United Funding, the undisputed portion (in an amount not less than the principal advanced under the loan) shall

be paid on the Effective Date and the disputed portion shall be paid upon the entry of a Final Order allowing the claim

          c)  <u>Point Center Financial</u>. In the event that the Bankruptcy Court determines that the lien of Point Center Financial is senior in all respects to the liens of the holders of Mechanic's Lien Claims, Point Center Financial shall receive all Net Sale Proceeds remaining after payment of Allowed Administrative Claims and payment of the claim of United Funding.

In the event that the Bankruptcy Court determines that the lien of Point Center Financial is junior in whole or in part to the liens of the holders of Mechanic's Lien Claims, a portion of the Net Sale Proceeds equal to the face amount of all Senior Mechanic's Lien Claims plus interest shall be reserved pending a judicial determination of each Mechanic's Lien Claim, and Point Center Financial shall receive the remaining Net Sales Proceeds remaining after payment of Allowed Administrative Claims. Upon final determination of the amounts of all Senior Mechanic's Lien Claims and payment of those claims, Point Center shall receive all remaining Net Sale Proceeds.

          d)  <u>Mechanic's Lien Claims</u>. In the event that the Bankruptcy Court determines that the lien of Point Center Financial is senior in all respects to the liens of the holders of Mechanic's Lien Claims, the holders of Mechanic's Lien Claims shall receive nothing under the Plan.

In the event that the Bankruptcy Court determines that the lien of Point Center Financial is junior in whole or in part to the liens of the holders of Mechanic's Lien Claims, a portion of the Net Sale Proceeds equal to the face amount of all Senior Mechanic's Lien Claims shall be reserved pending a judicial determination or settlement of each Mechanic's Lien Claim. Within 30 days following the Effective Date, parties in interest may file with the Bankruptcy Court objections to the amount and/or validity of any Mechanic's Lien Claim. If an objection is not filed to a Mechanic's Lien Claim within 30 days from the Effective Date, the uncontested Mechanic's Lien Claim shall be paid the face amount of its claim in full. If objections are filed to Mechanic's Lien Claims, the holders of those contested claims shall be paid the allowed amount of their claims upon the entry of an order allowing their claim.

      6.  <u>Alternative if Sale Does Not Close</u>. If the sale of the Real Property to the Purchaser fails to close by the Effective Date, the Debtor will obtain a new loan on the Real Property and will transfer the Real Property to Point Center Financial as follows:

          a)  <u>New Post-Confirmation Loan</u>.  A new Post-Confirmation Loan will be on substantially the following terms:

- <u>Loan Priority</u>: Superior first trust deed taking priority over all previous debt and liens, including taxes and to be approved by Bankruptcy Court.

- <u>Loan Amount</u>: $6,000,000.00.

- <u>Points</u>: Two (2) points equivalent to $100,000.00 to be paid to lender at funding of loan.

- <u>Initial Loan Term</u>: Twelve (12) months with automatic extension described below.

- <u>Interest</u>: Twelve Percent (12%) for the initial loan term.

- <u>Guaranteed Recovery</u>: $600,000.00 for the initial loan term.

- <u>Total Amount Payable by Borrower to Lender during Initial Loan Term</u>: $5,600,000.00.

- <u>Automatic Extension</u>: Six (6) months immediately succeeding initial loan term with thirty (30) day notice from borrower to lender prior to the expiration of the initial loan term.

- <u>Points for Loan Extension Term</u>: Two (2) points on the remaining principal balance as of the expiration of the initial loan term.

- <u>Interest for Loan Extension Term</u>: Fourteen percent (14%) on the remaining principal balance as of the expiration of the initial loan term.

- <u>Guaranteed Recovery for Loan Extension Term</u>: Fourteen percent (14%) on the remaining principal balance as of the expiration of the initial loan term.

- <u>Unit Sales Recovery</u>: During the initial loan term, lender will receive eighty percent (80%) of the gross sales price of any unit sales. during the loan extension term, the lender will receive one hundred percent (100%) of the gross sales price of any remaining unit sales.

- <u>Attorneys Fees</u>: All attorney fees incurred by lender for the negotiation, contract preparation and review, and final recordation of loan will be paid by borrower

b)   <u>Transfer of Real Property to Point Center Financial.</u> Upon the recordation of the deed of trust securing the Post-Confirmation Loan, the Real Property shall be transferred to Point Center Financial free and clear of all liens and encumbrances other than the deed of trust securing the Post-Confirmation Loan and the Senior Mechanic's Liens.

c)   <u>Senior Mechanic's Lien Holder Committee.</u> A committee of not less than three Senior Mechanic's Lien Holders (the "Senior Mechanic's Lien Holder Committee") shall be appointed by the Official Mechanics Lienholder Committee to act on behalf of all Senior Mechanic's Lien Holders with respect to the Real Property following transfer of the Real Property to Point Center Financial . The Senior Mechanic's Lien Holder Committee shall have the power to negotiate with Point Center Financial regarding the sale of Units or the entire Real Property and shall have the power to reconvey each of the Senior Mechanic's Liens on terms it believes are in the best interests of the Senior Mechanic's Lien Holders in order to facilitate a sale of a Unit or the entire Real Property. The Senior Mechanic's Lien Holder Committee shall not have any powers to compromise issues regarding the amount or validity of any particular Senior Mechanic's Lien.

d)   <u>Use of Post-Confirmation Loan Proceeds</u>. The Post-Confirmation Loan Proceeds shall be used as follows:

(1)   <u>Administrative Claims</u>. Allowed Administrative Claims shall be paid from the Post-Confirmation Loan Proceeds. Each Administrative Claim shall be paid in full on the Distribution Date.

(2)   <u>United Funding</u>. The Allowed claim of United Funding shall be paid in full from the Post-Confirmation Loan Proceeds. In the event that the payoff demand of United Funding is disputed by a party in interest, the Bankruptcy Court shall determine the Allowed amount of the claim of United Funding. If the payoff demand of United Funding is not disputed, the Allowed claim of United Funding shall be paid in full on the Effective Date. If a party in interest disputes the payoff demand of United Funding, the undisputed portion (in an amount not less than the principal advanced under the loan) shall be paid on the Effective Date and the disputed portion shall be paid upon the entry of a Final Order allowing the claim.

(3)   <u>Point Center Financial</u>. Any Post-Confirmation Loan Proceeds remaining after the payment of Allowed Administrative Claims and the Allowed claim of United funding shall be paid to the post-confirmation lender to reduce the amount of the Post-Confirmation Loan or as otherwise agreed to by Point Center Financial and the holders of the Senior Mechanic's Lien Claims.

7.  Disbursing Agent. A disbursing agent shall be appointed to make all distributions under the Plan. The disbursing agent shall be selected by the Official Mechanics Lienholder Committee and shall be a disinterested professional fiduciary. The employment and rate of compensation of the disbursing agent shall be approved by the Bankruptcy Court on the same criteria as professionals employed by a bankruptcy estate. The compensation of the disbursing agent shall be subject to approval by the Bankruptcy Court upon application noticed to the holders of Mechanic's Lien Claims and Point Center Financial. The fees of the Disbursing Agent shall be paid from the Net Sale Proceeds or the Post-Petition Loan Proceeds. The roll of the Disbursing Agent shall be limited to holding and disbursing the Net Sale Proceeds or the Post-Petition Loan Proceeds. The Disbursing Agent shall not be a party in interest with authority to object to claims or administer assets of the bankruptcy estate other than the Net Sale Proceeds or the Post-Petition Loan Proceeds.

Disbursing Agent may make any number of interim distributions as it deems appropriate. Distributions shall be made to the addresses contained in the proofs of claim filed by such holders, the addresses contained in the recorded mechanic's lien if no proof of claim was filed, or the last known address of such holders.  Checks issued by the Disbursing Agent shall be null and void if not cashed within ninety days of the date of issuance thereof.  If any distribution is returned as undelivered, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  Amounts with respect to undeliverable distributions made by the Disbursing Agent shall be returned to the Disbursing Agent until such distributions are claimed.  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall be paid to Point Center Financial and all further claims on the funds shall be forever barred.

Prior to making distributions, the Disbursing Agent shall reserve sufficient cash for the payment of (1) all estimated administrative claims, (2) all estimated post-confirmation expenses of the Disbursing Agent, and (3) all contested Mechanic's Lien Claims.

G.  Determination of Claims.

The Bankruptcy Court established a claims bar date of October 31, 2008. Approximately twenty-one proofs of claim were filed.  Approximately 29 creditors recorded mechanic's liens against the Debtor's property. Of those, 15 did not file proof of claim and 11 were not scheduled by the Debtor. The Debtor has asked for additional information from the mechanic's lien holders and is in the process of analyzing the claims in order to determine the correct amounts of the claims, which claimants have enforceable mechanics lien claims, and which claim overlap with other mechanic's lien claims. Summaries of the claims in Class 3 and Class 5 are attached hereto as Exhibits "C" and "D" respectively.

## IV. LIQUIDATION ANALYSIS

When evaluating the terms of the Plan, each creditor should weigh various alternatives for payment.  One alternative to the Plan is the liquidation of all of the estate's assets, through a proceeding under chapter 7 the Bankruptcy Code.  If the Debtor's case was converted to a case under chapter 7 of the Bankruptcy Code, a chapter 7 trustee would be appointed and would liquidate all of the Debtor's assets and distribute the proceeds to the creditors.

This is a liquidating plan. At best, the sale proceeds would be the same in a chapter 7 case. At worst, a chapter 7 trustee could choose not market the property, but would allow the secured creditors foreclose on the property. There would be an extra layer of administrative expenses in a chapter 7 case

11

due to the fees paid to the trustee. However, the chapter 11 case also has an additional layer of administrative expenses due to the existence of the Official Committee of Lien Holders which exists in the chapter 11, but would not exist in a chapter 7. Accordingly, the Plan Proponents believe that creditors will receive more under the Plan than they would if the case was converted to a case under chapter 7.

## V.  ADDITIONAL SOURCES OF INFORMATION

Additional sources of information available to all creditors include the various schedules and reports which were filed by the Debtor in accordance with the provisions of Bankruptcy Code.  These include, without limitation, the "Chapter 11 Statement of Financial Affairs for Debtor Engaged In Business," Schedules and monthly operating reports for all periods from May 2008 to the present.  The schedules and operating reports described above are available for inspection and review by the public in the office of the Clerk of the United States Bankruptcy Court located at 325 West F Street, San Diego, California during regular business hours (Monday - Friday, 9:00 a.m. to 4:00 p.m.).

## VI.  VOTING INSTRUCTIONS AND CONFIRMATION PROCEDURES

A.  Voting Procedure.

Bankruptcy is a type of creditor democracy.  The Plan divides the Claims of Creditors and Equity Interest holders into six (6) separate classes.  Only impaired classes of creditors who receive anything under the Plan are entitled to vote on the Plan.  As a general rule "impaired classes" include creditors who, under the Plan, will not receive payment in full of their Claims on the Effective Date of the Plan.  In this case, all Classes are impaired, however only Classes 1, 2, and 3 will receive anything under the Plan. Classes 4, 5, and 6 will receive nothing under the Plan and are deemed to have rejected the Plan. Classes 4, 5, and 6 are not entitled to vote on the Plan.

All creditors entitled to vote on the Plan must cast their vote by completing, dating and signing the "Ballot," which is enclosed with this Disclosure Statement.  When fully executed, the Ballot must be mailed to Alan Vanderhoff, Esq., 750 "B" Street, Suite 1620, San Diego, California 92101 such that it is received not later than 5:00 p.m. (PDT) on January 25, 2010.  A vote rejecting the Plan may be changed to a vote accepting the Plan anytime prior to the conclusion of the confirmation hearing by providing notice of the change to counsel for the Debtor.

B.  Hearing on Confirmation of Plan.

The Court has set February 8, 2010, at 10:00 a.m., in Department Three (3) of the Bankruptcy Court as the time, date and place for the hearing to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.  Each creditor will receive, with this Disclosure Statement, a Notice of Hearing on Confirmation of the Plan which gives the details of that hearing and a date by which objections to the confirmation of the Plan, if any, must be filed.  That hearing may be continued from time to time by announcements made by the Bankruptcy Court in open session at the hearing without any further written notice being provided to you.  Your attendance at the hearing on Confirmation of the Plan is encouraged.

C.  Acceptances Necessary to Confirm Plan.

At the scheduled hearing, the Court must determine, among other things, whether the Plan has been accepted by each impaired class.  Under Section 1126 of the Code, an impaired Class of Claims is deemed to have accepted the Plan upon a favorable vote of at least two-thirds in (dollar) amount and more than one-half in number of the Allowed Claims of Class members voting on the Plan.  Further,

unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that Class members will receive at least as much as they would if the Debtor was liquidated under chapter 7 of the Code. The Plan Proponents believe that the Plan satisfies this requirement as to each Class.

      D.  <u>Confirmation of the Plan Without Necessary Acceptances</u>.

The Plan may be confirmed even if it is not accepted by one or more of the impaired classes, if the Court finds that the Plan does not discriminate unfairly against and is "fair and equitable" as to each dissenting class. This provision is generally set forth in Section 1129(b) of the Bankruptcy Code. Generally, that section requires a showing that the Claims in such Class either will receive the full value of the Claim or, if they receive less, no Class with junior liquidation priority may receive anything. With respect to a class of unsecured Claims, the term "fair and equitable" in section 1129(b) means that the Plan provides that each holder of a Claim of such class receive or retain on account of such Claim property of a value, as of the effective date of the Plan, equal to the allowed amount of such Claim, or that the holder of any Claim or interest that is junior to the Claims of such class will not receive or retain any property under the Plan on account of such junior Claim or interest. Section 1129(b) is a relatively flexible, yet very complex provision, and this summary is not intended to be a complete statement of the law. You should consult your own legal counsel for a full understanding of your rights and the Plan Proponents' powers under that section.

Please take notice that if one or more classes of impaired Claims fail to accept the Plan the Plan Proponents presently intend to request confirmation of the Plan notwithstanding the non-acceptance of that class pursuant to the provisions of Bankruptcy Code section 1129(b).

      E.  <u>Plan Amendments at Confirmation Hearing</u>.

The provisions of the Bankruptcy Code give the Plan Proponents substantial power to amend and alter provisions of the Plan up to and including the time of the Confirmation Hearing. The provisions of the Plan regarding technical and curative amendments are particularly significant because they permit the Plan Proponents to propose and implement any number or type of amendments to the Plan for the purpose of neutralizing or curing an actual or claimed defect in the Plan asserted by the Bankruptcy Court or any party-in-interest. This right extends additionally to any amendments which are made to respond to or neutralize any objections to the Plan previously advanced by any party-in-interest.

By its terms, the Plan does not require any prior written notice of such technical and/or curative amendment to be given to any creditor or party-in-interest. The only requirement for notice of such modification is that the modification be disclosed in open session of the confirmation hearing. Unless you attend all sessions of the confirmation hearing, you may not have the opportunity to object to such changes.

In addition to the foregoing, the provisions of the Bankruptcy Code vest the Bankruptcy Court with substantial power and discretion to effectively modify (in ways which may be favorable or unfavorable) the rights and benefits which various parties may receive under the Plan by superimposing various conditions or other requirements as part of its Order of Confirmation. No prior notice of any provisions that the Court may insert in its Order of Confirmation will be given to any party-in-interest except to the extent that such intentions are disclosed in open session of the Bankruptcy Court. Here again, your failure to attend any session of the Confirmation Hearing might mean you will not have the opportunity to object to or otherwise be heard as to potential amendatory provisions to the Plan (if any) which the Court decides to insert in its Order of Confirmation.

All parties-in-interest are encouraged to personally attend every session of the confirmation hearing.  Only by such attendance can parties be assured of obtaining notice and an opportunity to be heard on all amendatory provisions which may affect their rights under the Plan.

## VII.   TAX CONSEQUENCES

The Plan Proponents are not offering tax advice to any creditor and this Disclosure Statement should not be considered to contain any specific advice or instruction considering the tax treatment of any Claim or interest.  Each creditor is urged to consult with its own legal, accounting or other advisor concerning the tax treatment of its Claim or any distribution from or on behalf of the Debtor pursuant to the Plan or otherwise.

## VIII.   SOLICITATION OF ACCEPTANCES OF THE PLAN

The Plan Proponents believe that the Plan will provide the best distribution that is possible in this case.  The Plan Proponents urge you to vote to accept the Plan.  To accept or reject the Plan, the enclosed Ballot must be returned to the place and by the time specified on the Ballot.

December 30, 2009          VANDERHOFF LAW GROUP

                    /s/ Alan Vanderhoff
          By: _____
                  Alan Vanderhoff
                  Attorneys for MI ARBOLITO, LLC

December 30, 2009          SOLOMON, GRINDLE, SILVERMAN, SPINELLA, APC

                    /s/ Pamela LaBruyere
          By: _____
                  Pamela LaBruyere
                  Attorneys for POINT CENTER FINANCIAL, INC.

December 30, 2009          BAKER & McKENZIE, LLP

                    /s/ Ali M. M. Mojdehi
          By: _____
                  Ali M. M. Mojdehi

                  Attorneys for OFFICIAL MECHANICS LIENHOLDER COMMITTEE

Alan Vanderhoff, Cal. Bar No. 138032
Vanderhoff Law Group
750 B Street, Suite 1620
San Diego, California  92101
(619) 299-2050
Attorneys for Mi Arbolito, LLC

Pamela LaBruyere, Esq.
Solomon, Grindle, Silverman, Spinella, APC
12651 High Bluff Drive, Suite 300
San Diego, CA 92130
Attorneys for Point Center Financial, Inc.
(858)793-8500

Ali M.M. Mojdehi, Esq.
Janet D. Gertz, Esq.
Baker & McKenzie
12544 High Bluff Drive, Third Floor
San Diego, CA 92130-3051
(858)523-6280
Attorneys for the Official Mechanics Lienholder Committee

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) BK. No. 08-04553-LT11 |
| | ) |
| MI ARBOLITO, LLC, | ) JOINT PLAN OF REORGANIZATION |
| | ) DATED DECEMBER 31, 2009 |
| Debtor. | ) |
| | ) Date:    February 8, 2010 |
| | ) Time:    10:00 a.m. |
| | ) Dept.    Three |
| | ) Judge:   Hon. Laura S. Taylor |
| | ) |
| | ) |
| _____ | ) |

Mi Arbolito, LLC, debtor and debtor-in-possession in the above-captioned bankruptcy case (the "Debtor"), Point Center Financial, Inc., and the Official Mechanics Lienholder Committee hereby jointly propose this Plan of reorganization.

EXHIBIT A

ARTICLE 1

Plan Summary

The Plan is jointly proposed by the Debtor, Point Center Financial, and the Official Mechanics Lienholder Committee (collectively, the "Plan Proponents"). The Plan Proponents intend that the Debtor's Real Property will be sold under the Plan to the Chhatrala Group or its designees and the sale proceeds disbursed in accordance with the terms of the Plan. In that circumstance, United Development and the Administrative Claims would be paid in full from the sale proceeds. The remaining sale proceeds would be disbursed to Point Center Financial and, possibly, the holders of mechanic's liens, depending on the outcome of the Bankruptcy Court's determination of the priority of the mechanic's liens.

The Plan contains a back-up alternative that will apply in the unexpected event that the sale to the Chhatrala Group does not close. If the sale to the Chhatrala Group does not close, the DIP Loan would be refinanced and the property would be transferred to Point Center Financial free and clear of all liens and interests except those specified in the Plan. The Real Property would be transferred subject to the lien of the Post-Confirmation lender and the mechanic's liens to the extent that the Bankruptcy Court determines that the mechanic's liens are senior to the lien of Point Center Financial.

Under each scenario, Del Toro Holdings, the unsecured creditors, and the equity holders would receive nothing under the Plan. Moreover, under each scenario, Point Center Financial would exonerate the Martinez and Cutri Guaranties.

ARTICLE 2

Definitions

2.01    "Administrative Expense" means any cost or expense of administration of the Debtor's Chapter 11 bankruptcy case entitled to priority in accordance with the provisions of sections 503(b) and 507(a)(1) of the Bankruptcy Code.

2.02    "Allowed" when used in reference to a Claim means (i) a Claim against the Debtor, proof of which was timely filed, as to which no objection has been interposed; or (ii) if no proof of Claim has been filed, but the Claim has been scheduled by the Debtor as liquidated in amount and not disputed or contingent, as to which no objection has been interposed; or (iii) a Claim as to which any objection has been interposed, to the extent such Claim has been Allowed in whole or in part by a Final Order.

2.03    "Bankruptcy Code" means title 11 of the United States Code.

2.04    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of California or, in the event of a withdrawal of the reference, the United States District Court for the Southern District of California.

2.05    "Claim" means any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.06    "Confirmation Order " means a Final Order of the Bankruptcy Court confirming the Plan.

2

EXHIBIT A

2.07    "Contested Claim" means any Claim that is not an Allowed Claim.

2.08    "Debtor" means Mi Arbolito, LLC.

2.09    "DIP Loan" means the post-petition loan to the Debtor from the DIP Lender approved by the Bankruptcy Court by an order entered on December 23, 2008 and secured by a super-priority lien on the Real Property.

2.10    "Disputed Claim" means a claim to which an objection has been filed and which has not been determined by a final, non-appealable order of the Bankruptcy Court.

2.11    "Distribution Date" when used with respect to each Allowed Claim, means the later of (i) the Effective Date, and (ii) the date upon which the Claim becomes an Allowed Claim.

2.12    "Effective Date" means the first business day that is more than 15 days after the Confirmation Order becomes a Final Order.

2.13    "Final Order" means an order or judgment of a court of competent jurisdiction, including the Bankruptcy Court, which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.14    "Guarantors" means Joseph P. Martinez and Anthony G. Cutri.

2.15    "Lender Liability Claim " means the Debtor's claims against Point Center Financial including, without limitation, claims for fraud, interference with economic advantage, breach of contract, and equitable subordination.

2.16    "Luxury Condominium Building " means the 14 story, luxury condominium development currently under construction on the Real Property.

2.17    "Martinez and Cutri Guarantees" means any and all guarantees of the Point Center Loan made by Joseph P. Martinez and Anthony G. Cutri or any entities in which they own an interest including, without limitation, that certain Guaranty of Completion and Performance dated June 1, 2006, signed by Joseph P. Martinez and Anthony G. Cutri.

2.18    "Mechanics' Lien Claims" means Claims for which a valid and perfected mechanics' lien exists on the Real Property under applicable law.

2.19    "Net Sale Proceeds" means the proceeds from the sale of the Real Property after customary costs of sale.

2.20    "Plan" means this Chapter 11 plan for the Debtor, as it may be modified from time to time, and all exhibits and schedules thereto.

2.21    "Point Center Adversary Proceeding" means the adversary proceeding filed by the Debtor against Point Center Financial as Adv. No. 08-90473.

2.22    "Point Center Loan" means the loan made by Point Center Financial to the Debtor.

2.23    "Post-Confirmation Loan" means a refinance of the DIP Loan entered into pursuant to the Plan.

2.24    "Post-Confirmation Loan Proceeds" means the proceeds from the Post-Confirmation Loan.

EXHIBIT A

2.25    "Purchaser" means the Chhatrala Group or other entity which purchases the Real Property pursuant to the terms of the Plan.

2.26    "Real Property" means the real property owned by the Debtor and located at 3415 Sixth Avenue, San Diego, California.

2.27    "Reorganized Debtor" means the Debtor after the entry of a Confirmation Order.

2.28    "Senior Mechanics' Lien Claims" means Mechanics' Lien Claims which the Bankruptcy Court determines are senior in priority to the lien held by Point Center Financial or a portion of the lien held by Point Center Financial.

2.29    "United Development" means United Development Funding Land Opportunity Fund, L.P.

## ARTICLE 3

### Payment of Administrative Claims and Real Property Tax Claims

3.01    Administrative Claims.  Administrative Claims Allowed pursuant to Bankruptcy Code sections 503(b)(1) and 507(a)(1) (and not previously paid), shall be paid in full on the Effective Date from the Net Sale Proceeds or from the proceeds of the Post-Confirmation Loan. Administrative Claims against the Debtor, including the applications of court-approved professionals, shall be filed within thirty days following the entry of an order confirming the Plan.

3.02    Real Property Taxes.  Real property taxes due and payable on or before the Confirmation Date shall be paid by the Purchaser in the event of a sale of the Real Property under the Plan or, alternatively, from the Post-Confirmation Loan proceeds.

## ARTICLE 4

### Classification of Claims and Equity Interests

4.01    Class 1.  Class 1 consists of the Allowed Claim of United Development.

4.02    Class 2.  Class 2 consists of the Allowed secured Claim of Point Center Financial, Inc.

4.03    Class 3.  Class 3 consists of the holders of Allowed Mechanics' Lien Claims.

4.04    Class 4.  Class 4 consists of the Allowed secured Claims of Jon Charles Stanton, Alan Stewart, Ernest Hahn, Todd McKinney, Charles Stoopack, Christopher Werner, Stephen Levandowski, Thuy Nguyen, Jim Lackey, and Del Toro Holdings.

4.05    Class 5.  Class 5 consists of Allowed unsecured Claims.

4.06    Class 6.  Class 6 consists of the holders of equity interests in the Debtor.

## ARTICLE 5

### Treatment of Claims

5.01    Class 1 – United Development.  United Development is impaired. The loan default alleged by United Development regarding the non-payment of 2009 real property taxes shall be cured *nunc pro tunc* to the date that the taxes were first due and payable. The default shall be cured by the payment of the real property from the Post-Confirmation Loan Proceeds or through the sale of the Real Property subject to the existing real property taxes. United Development shall receive interest on its

EXHIBIT A

claim at the contract, non-default rate. The secured claim of United Development shall be paid in full on the Effective Date from either the Net Sale Proceeds or the proceeds of the Post-Confirmation Loan.

5.02    Class 2 – Point Center Financial.  Point Center Financial is impaired.

(a)    Sale.  In the event that the sale to the Purchaser closes, Point Center Financial will receive the Net Sale Proceeds remaining after the Allowed Claim of United Development, the Allowed Administrative Claims, and the Allowed Senior Mechanics' Lien Claims are paid in full.

(b)    No Sale.  In the event that the sale to the Purchaser does not close, Point Center Financial will receive title to the Real Property subject only to (1) the lien securing the Post-Confirmation Loan, and (2) the Senior Mechanics' Lien Claims. The relative priority of the liens of Point Center Financial and the Mechanics' Lien claimants will be determined by the Bankruptcy Court as part of the hearing on the confirmation of the Plan. In the event that the Bankruptcy Court determines that the mechanics' liens are junior in all respects to the lien of Point Center Financial, the Real Property will be transferred to Point Center Financial free and clear of all mechanics' liens.

5.03    Class 3 – Mechanics' Liens.  Class 3 is impaired. The relative priority of the liens of Point Center Financial and the Mechanics' Lien claimants will be determined by the Bankruptcy Court as part of the hearing on the confirmation of the Plan. In the event that the Bankruptcy Court determines that the mechanics' liens are junior in all respects to the lien of Point Center Financial, the Mechanics' Lien claimants will receive nothing under the Plan.  In the event that the Bankruptcy Court determines that the mechanics' liens are senior in whole or in part to the lien of Point Center Financial, the Mechanics' Lien claimants will receive the following treatment under the Plan:

(a)    Sale.  In the event that the sale to the Purchaser closes, the Net Sale Proceeds remaining after the payment of the Allowed Claim of United Development and the Allowed Administrative Claims will be distributed to Point Center Financial and the Allowed Senior Mechanics' Lien Claims in the order of their lien priority. Allowed Senior Mechanics' Lien Claims shall be entitled to interest on their Claims at the rate of ten percent (10%) per annum. Under legal theories advanced by the Committee, it is possible that the Bankruptcy Court could determine that a portion of the secured claim of Point Center Financial is senior to the Mechanics' Lien Claims and a portion is junior to the Mechanics' Lien Claims.

(b)    No Sale.  In the event that the sale to the Purchaser does not close, Point Center Financial will receive title to the Real Property and the liens of the Senior Mechanics' Lien Claims will remain on the Real Property.

5.04    Class 4 – Del Toro Holdings.  Class 4 is impaired. The holders of Class 4 Claims shall receive nothing under the Plan. Class 4 will be deemed to have rejected the Plan.

5.05    Class 5 – General Unsecured Creditors.  Class 5 is impaired. The holders of Class 5 Claims shall receive nothing under the Plan. Class 5 will be deemed to have rejected the Plan.

5.06    Class 6 – Equity Holders.  Class 6 is impaired. The Debtor's equity holders shall receive nothing on account of their interests under the Plan. Class 6 will be deemed to have rejected the Plan.

ARTICLE 6

Means for Implementing the Plan

6.01    Dismissal of Claims Against Point Center Financial. Upon entry of a Final Order confirming the Plan, the Lender Liability Claims shall be assigned to the Guarantors and the Point

5

Center Adversary Proceeding shall be dismissed without prejudice. The Guarantors shall assert the Lender Liability Claims only in the event that an action is filed to enforce the Martinez and Cutri Guarantees. The Guarantors shall release the Lender Liability Claims upon the complete exoneration of the Martinez and Cutri Guarantees by both Point Center Financial and First American Title Company. The statutes of limitation regarding the Lender Liability Claims shall be extended to a date that is 60 days after the expiration of the statute of limitations for bringing an action under the Martinez and Cutri Guarantees.

6.02    Exoneration of Martinez and Cutri Guarantees. Upon the closing of either the sale of the Real Property or the closing of the Post-Confirmation Loan, the Martinez and Cutri Guarantees shall be exonerated and released by Point Center Financial, except to the extent necessary to preserve certain subrogation rights granted to First American Title Company. Point Center Financial shall not enforce the guarantees itself or assign its rights under the guarantees. Point Center Financial shall use its best efforts to obtain a release of the subrogation rights of First American Title Company. The exoneration and release of the Martinez and Cutri Guarantees by Point Center Financial shall occur automatically upon the entry of the Confirmation Order and shall be the voluntary and consensual act of Point Center Financial as a proponent of the Plan.

6.03    Sale of Real Property. The Debtor will sell the Real Property to the Purchaser. The purchase price will be $16 million. The Real Property shall be transferred to the Purchaser free and clear of all liens and encumbrances except for real property taxes. The sale will be approved by the Bankruptcy Court as part of the confirmation of the Plan and shall close on the Effective Date.

(a)    Use of Net Sale Proceeds. The Net Sale Proceeds shall be used as follows:

(i)    Administrative Claims. Allowed Administrative Claims shall be paid from the Net Sale Proceeds. Each Administrative Claim shall be paid in full on the Distribution Date.

(ii)    United Funding. The Allowed claim of United Funding shall be paid in full from the Net Sale Proceeds. In the event that the payoff demand of United Funding is disputed by a party in interest, the Bankruptcy Court shall determine the Allowed amount of the claim of United Funding. If the payoff demand of United Funding is not disputed, the Allowed claim of United Funding shall be paid in full on the Effective Date. If a party in interest disputes the payoff demand of United Funding, the undisputed portion (in an amount not less than the principal advanced under the loan) shall be paid on the Effective Date and the disputed portion shall be paid upon the entry of a Final Order allowing the claim.

(iii)    Point Center Financial.

1)    In the event that the Bankruptcy Court determines that the lien of Point Center Financial is senior in all respects to the liens of the holders of Mechanic's Lien Claims, Point Center Financial shall receive all Net Sale Proceeds remaining after payment of Allowed Administrative Claims and payment of the claim of United Funding.

2)    In the event that the Bankruptcy Court determines that the lien of Point Center Financial is junior in whole or in part to the liens of the holders of Mechanic's Lien Claims, a portion of the Net Sale Proceeds equal to the face amount of all Senior Mechanic's Lien Claims shall be reserved pending a judicial determination of each Mechanic's Lien Claim, and Point Center Financial shall receive the remaining Net Sales Proceeds remaining after payment of Allowed Administrative

6

EXHIBIT A

Claims. Upon final determination of the amounts of all Senior Mechanic's Lien Claims and payment of those claims, Point Center shall receive all remaining Net Sale Proceeds.

        (iv)      <u>Mechanic's Lien Claims</u>.

              1)      In the event that the Bankruptcy Court determines that the lien of Point Center Financial is senior in all respects to the liens of the holders of Mechanic's Lien Claims, the holders of Mechanic's Lien Claims shall receive nothing under the Plan.

              2)      In the event that the Bankruptcy Court determines that the lien of Point Center Financial is junior in whole or in part to the liens of the holders of Mechanic's Lien Claims, a portion of the Net Sale Proceeds equal to the face amount of all Senior Mechanic's Lien Claims plus interest shall be reserved pending a judicial determination or settlement of each Mechanic's Lien Claim. Within 30 days following the Effective Date, parties in interest may file with the Bankruptcy Court objections to the amount and/or validity of any Mechanic's Lien Claim. If an objection is not filed to a Mechanic's Lien Claim within 30 days from the Effective Date, the uncontested Mechanic's Lien Claim shall be paid the face amount of its claim in full. If objections are filed to Mechanic's Lien Claims, the holders of those contested claims shall be paid the allowed amount of their claims upon the entry of an order allowing their claim.

      6.04    <u>Alternative if Sale Does Not Close</u>. If the sale of the Real Property to the Purchaser fails to close by the Effective Date, the Debtor will obtain a new loan on the Real Property and will transfer the Real Property to Point Center Financial as follows:

      (a)    <u>New Post-Confirmation Loan</u>. The new Post-Confirmation Loan will be on substantially the following terms:

- <u>Loan Priority</u>: Superior first trust deed taking priority over all previous debt and liens, including taxes and to be approved by Bankruptcy Court.

- <u>Loan Amount</u>: $6,000,000.00.

- <u>Points</u>: Two (2) points equivalent to $100,000.00 to be paid to lender at funding of loan.

- <u>Initial Loan Term</u>: Twelve (12) months with automatic extension described below.

- <u>Interest</u>: Twelve Percent (12%) for the initial loan term.

- <u>Guaranteed Recovery</u>: $600,000.00 for the initial loan term.

- <u>Total Amount Payable by Borrower to Lender during Initial Loan Term</u>: $5,600,000.00.

- <u>Automatic Extension</u>: Six (6) months immediately succeeding initial loan term with thirty (30) day notice from borrower to lender prior to the expiration of the initial loan term.

- <u>Points for Loan Extension Term</u>: Two (2) points on the remaining principal balance as of the expiration of the initial loan term.

- <u>Interest for Loan Extension Term</u>: Fourteen percent (14%) on the remaining principal balance as of the expiration of the initial loan term.

- <u>Guaranteed Recovery for Loan Extension Term</u>: Fourteen percent (14%) on the remaining principal balance as of the expiration of the initial loan term.

EXHIBIT A

- <u>Unit Sales Recovery</u>: During the initial loan term, lender will receive eighty percent (80%) of the gross sales price of any unit sales. during the loan extension term, the lender will receive one hundred percent (100%) of the gross sales price of any remaining unit sales.

- <u>Attorney Fees</u>: All attorney fees incurred by lender for the negotiation, contract preparation and review, and final recordation of loan will be paid by borrower.

(b)     <u>Transfer of Real Property to Point Center Financial</u>. Upon the recordation of the deed of trust securing the Post-Confirmation Loan, the Real Property shall be transferred to Point Center Financial free and clear of all liens and encumbrances other than the deed of trust securing the Post-Confirmation Loan and the Senior Mechanic's Liens.

(c)     <u>Committee of Senior Mechanic's Lien Holders</u>. A committee of not less than three Senior Mechanic's Lien Holders (the "Senior Mechanic's Lien Holder Committee") shall be appointed by the Official Mechanics Lienholder Committee to act on behalf of all Senior Mechanic's Lien Holders with respect to the Real Property following transfer of the Real Property to Point Center Financial . The Senior Mechanic's Lien Holder Committee shall have the power to negotiate with Point Center Financial regarding the sale of Units or the entire Real Property and shall have the power to reconvey each of the Senior Mechanic's Liens on terms it believes are in the best interests of the Senior Mechanic's Lien Holders in order to facilitate a sale of a Unit or the entire Real Property. The Senior Mechanic's Lien Holder Committee shall not have any powers to compromise issues regarding the amount or validity of any particular Senior Mechanic's Lien.

(d)     <u>Use of Post-Confirmation Loan Proceeds</u>. The Post-Confirmation Loan Proceeds shall be used as follows:

(i)     <u>Administrative Claims</u>. Allowed Administrative Claims shall be paid from the Post-Confirmation Loan Proceeds. Each Administrative Claim shall be paid in full on the Distribution Date.

(ii)     <u>United Funding</u>. The Allowed claim of United Funding shall be paid in full from the Post-Confirmation Loan Proceeds. In the event that the payoff demand of United Funding is disputed by a party in interest, the Bankruptcy Court shall determine the Allowed amount of the claim of United Funding. If the payoff demand of United Funding is not disputed, the Allowed claim of United Funding shall be paid in full on the Effective Date. If a party in interest disputes the payoff demand of United Funding, the undisputed portion (in an amount not less than the principal advanced under the loan) shall be paid on the Effective Date and the disputed portion shall be paid upon the entry of a Final Order allowing the claim.

(iii)     <u>Point Center Financial</u>. Any Post-Confirmation Loan Proceeds remaining after the payment of Allowed Administrative Claims and the Allowed claim of United funding shall be paid to the post-confirmation lender to reduce the amount of the Post-Confirmation Loan or as otherwise agreed to by Point Center Financial and the holders of the Senior Mechanic's Lien Claims.

6.05     <u>Disbursing Agent</u>. A disbursing agent shall be appointed to make all distributions under the Plan. The disbursing agent shall be selected by the Official Mechanics Lienholder Committee and shall be a disinterested professional fiduciary. The employment and rate of compensation of the disbursing agent shall be approved by the Bankruptcy Court on the same criteria as professionals employed by a bankruptcy estate. The compensation of the disbursing agent shall be subject to approval by the Bankruptcy Court upon application noticed to the holders of Mechanic's Lien Claims and Point

EXHIBIT A

Center Financial. The fees of the Disbursing Agent shall be paid from the Net Sale Proceeds or the Post-Petition Loan Proceeds. The roll of the Disbursing Agent shall be limited to holding and disbursing the Net Sale Proceeds or the Post-Petition Loan Proceeds. The Disbursing Agent shall not be a party in interest with authority to object to claims or administer assets of the bankruptcy estate other than the Net Sale Proceeds or the Post-Petition Loan Proceeds.

Disbursing Agent may make any number of interim distributions as it deems appropriate. Distributions shall be made to the addresses contained in the proofs of claim filed by such holders, the addresses contained in the recorded mechanic's lien if no proof of claim was filed, or the last known address of such holders.  Checks issued by the Disbursing Agent shall be null and void if not cashed within ninety days of the date of issuance thereof.  If any distribution is returned as undelivered, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  Amounts with respect to undeliverable distributions made by the Disbursing Agent shall be returned to the Disbursing Agent until such distributions are claimed.  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall be paid to Point Center Financial and all further claims on the funds shall be forever barred.

Prior to making distributions, the Disbursing Agent shall reserve sufficient cash for the payment of (1) all estimated administrative expenses, (2) all estimated post-confirmation expenses of the Disbursing Agent, and (3) all contested Mechanic's Lien Claims.

6.06    <u>Reorganized Debtor</u>. The Debtor is not expected to have any ongoing roll in the implementation of the Plan after confirmation of the Plan other than transferring title of the Real Property in accordance with the terms of the Plan.

6.07    <u>Other Assets</u>. Any claims of the Debtor's bankruptcy estate may have against third parties including, without limitation, avoidance claims, will be abandoned upon entry of the Confirmation Order.

## ARTICLE 7

### Executory Contracts and Unexpired Leases

7.01    <u>All Contracts and Leases Rejected</u>.    All executory contracts and unexpired leases shall be rejected as of the Effective Date.

7.02    <u>Bar to Rejection Damages</u>.  Any individual or entity holding a Claim based upon the rejection of an executory contract or unexpired lease pursuant to this Article must, within thirty days after Confirmation, file a proof of claim with the Bankruptcy Court.  Such Claims shall be treated as Class 5 Claims unless the Bankruptcy Court orders otherwise.  The failure of any such individual or entity to file a proof of claim within the specified time period will result in the disallowance of such Claim.

## ARTICLE 8

### Miscellaneous Provisions

8.01    <u>Modification of Plan</u>.  Modifications of the Plan may be proposed in writing by the Plan Proponents at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with

EXHIBIT A

section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after confirmation and before its substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.  A holder of a Claim or equity interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

8.02    <u>Revocation of Plan</u>. The Plan Proponents reserve the right to revoke and withdraw the Plan prior to the commencement of the hearing to confirm the Plan provided that all Plan Proponents agree to revoke the Plan.  If the Plan Proponents revoke or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

8.03    <u>Cramdown</u>.  The Plan Proponents request the Bankruptcy Court to confirm the Plan pursuant to the provisions of section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed not to have accepted the Plan and any Class that fails to accept the Plan.

## ARTICLE 9

### Jurisdiction of the Bankruptcy Court

9.01    The Bankruptcy Court shall retain jurisdiction to the fullest extent permitted by law.

December 30, 2009          VANDERHOFF LAW GROUP

                                           /s/ Alan Vanderhoff
                          By: _____
                                  Alan Vanderhoff
                                  Attorneys for MI ARBOLITO, LLC


December 30, 2009          SOLOMON, GRINDLE, SILVERMAN, SPINELLA, APC

                                           /s/ Pamela LaBruyere
                          By: _____
                                  Pamela LaBruyere
                                  Attorneys for POINT CENTER FINANCIAL, INC.


December 30, 2009          BAKER & McKENZIE, LLP

                                           /s/ Ali M. M. Mojdehi
                          By: _____
                                  Ali M. M. Mojdehi
                                  Attorneys for OFFICIAL MECHANICS LIENHOLDER
                          COMMITTEE

                                                              EXHIBIT A

### CLASS 3 CLAIMS

| Creditor Name | POC Amount | Scheduled Amount | Recorded Lien Amount | Estimated Amount |
|---|---|---|---|---|
| Able Patrol and Guard | $47,775.38 | $39,600.00 | $45,071.95 | |
| Dynalectric Company | $485,721.90 | $284,213.00 | $1,232,989.45 | |
| Paul Hansen Equipment | $26,358.00 | $26,358.00 | $26,358.00 | |
| Industrial Fire Sprinkler Co., Inc. | $18,368.92 | $17,110.00 | $17,110.92 | |
| General Electric | $144,445.75 | $89,944.00 | $144,445.75 | |
| Landmark Hospitality Contracting | $732,782.10 | $334,765.00 | $677,108.76 | |
| Morrow Equipment Company | $93,755.83 | $41,268.00 | $52,487.71 | |
| Brady Company San Diego | $1,338,559.13 | $1,168,311.00 | $1,280,917.83 | |
| AO Reed & Company | $391,539.71 | $249,150.00 | $391,539.71 | |
| Division 8, Inc. | 475,000.00 | $368,166.00 | $475,000.00 | |
| Hanson Aggregate West, Inc. | $88,083.58 | $97,333.00 | $88,083.58 | |
| Applied Waterproofing Technology, Inc. | 0 | $38,409.00 | $37,111.10 | |
| Arcadia,Inc. | 0 | $41,957.00 | $41,957.85 | |
| Atlas Construction | 0 | $20,245.00 | $15,463.00 | |
| Brewer Crane | 0 | $60,514.00 | $54,030.00 | |
| Painters Unlimited California | 0 | $12,879.00 | $12,564.00 | |
| T.M. Structural | 0 | $713,661.00 | $713,661.46 | |
| Diamond Environmental Services | 0 | 0 | $2,993.40 | |
| Interior Specialists, Inc. | $113,113.58 | 0 | $113,113.88 | |
| LTD Sheet Metal, Inc. | $115,500.00 | 0 | $115,499.91 | |

EXHIBIT C

| Creditor Name | POC Amount | Scheduled Amount | Recorded Lien Amount | Estimated Amount |
|---|---|---|---|---|
| Commercial & Industrial Roofing | 0 | 0 | $94,190.00 | |
| Sunstate Equipment Co. | 0 | 0 | $4,500.00 | |
| Daily Disposal Services, Inc. | 0 | 0 | $9,230.30 | |
| C&L Concrete Cutting | 0 | 0 | $1,540.00 | |
| Commercial Scaffolding of California | 0 | 0 | $68,262.81 | |
| Minshew Brothers Steel Const., Inc. | 0 | 0 | $93,297.12 | |
| Pacific Western Millworks | 0 | 0 | $35,009.97 | |
| OJ Insulation, LP | 0 | 0 | $1,385.00 | |
| TOTAL: | $4,071,003.88 | $3,603,883.00 | $5,844,923.46 | |

Zero indicates that proof of claim was not filed or claim was not scheduled.

Note: Estimated Amounts will be updated prior to hearing on disclosure statement.

EXHIBIT C

## CLASS 5 CLAIMS

| Creditor Name | POC Amount | Scheduled Amount | Estimated Amount |
|---|---|---|---|
| 1700 Investors, LLC<br>750 B Street, Suite 1740<br>San Diego, CA. 92101 | 0.00 | $607,000.00 | $607,000.00 |
| Jeffrey Brown Photography<br>630 N. Crescent Ct.<br>San Diego, CA 92103 | 0.00 | $7,500.00 | $7,500.00 |
| John M. Turner, Esquire<br>Turner & Maasch, Inc.<br>550 West C Street, Ste 1150<br>San Diego, CA 92101 | 0.00 | $14,509.00 | $14,509.00 |
| Seltzer Caplan McMahon Vitek<br>750 B Street, Suite 2100<br>San Diego, CA 92101 | 0.00 | $296,860.00 | $296,860.00 |
| V. Frank Asaro, Esquire<br>Law Offices of V. Frank Asaro<br>4370 La Jolla Village Dr., Ste. 400<br>San Diego, CA 92122 | 0.00 | $14,980.00 | $14,980.00 |
| Golden Construction<br>PO Box 926<br>Pagosa Springs, CO 81147 | $5,080.00 | $9,830.00 | $5,080.00 |
| Supply Network dba Viking Supplynet<br>2353 International St.<br>Columbus, OH 43228 | 0.00 | $9,789.00 | 0.00 |
| Silvergate Investments, Inc.<br>c/o Tom Coffman<br>2311 Palo Danzante<br>Alpine, CA 92910 | 0.00 | $1,015,625.00 | 0.00 |
| TOTAL: | | | $945,929.00 |

Zero indicates that proof of claim was not filed or claim was not scheduled.

EXHIBIT D