1  Alan Vanderhoff, Cal. Bar No. 138032
   Vanderhoff Law Group
2  750 B Street, Suite 1620
   San Diego, California 92101
3  (619) 299-2050
   Attorneys for Mi Arbolito, LLC
4
   Pamela LaBruyere, Esq.
5  Solomon, Grindle, Silverman, Spinella, APC
   12651 High Bluff Drive, Suite 300
6  San Diego, CA 92130
   Attorneys for Point Center Financial, Inc.
7  (858)793-8500

8  Ali M.M. Mojdehi, Esq.
   Janet D. Gertz, Esq.
9  Baker & McKenzie
   12544 High Bluff Drive, Third Floor
10 San Diego, CA 92130-3051
   (858)523-6280
11 Attorneys for the Official Mechanics Lienholder Committee

12

13                    UNITED STATES BANKRUPTCY COURT

14                    SOUTHERN DISTRICT OF CALIFORNIA

15

16 | In re:                              | BK. No. 08-04553-LT11
17 | MI ARBOLITO, LLC,                   | STIPULATION TO MODIFY CONFIRMED
   |                                     | JOINT PLAN OF REORGANIZATION
18 |           Debtor.                   | DATED DECEMBER 31, 2009
19
20 |                                     | Date:   No hearing set.
   |                                     | Time:
   |                                     | Dept.   Three
21 |                                     | Judge:  Hon. Laura S. Taylor
22
23

24        Mi Arbolito, LLC (the "Debtor"), Point Center Financial, Inc. ("Point Center"), and the

25  Official Mechanics Lienholder Committee (the "Committee") (collectively, the "Plan Proponents")

26  hereby stipulate and agree to amend the Joint Plan of Reorganization Dated December 31, 2009 (the

27  "Joint Plan") which was confirmed by an order of this Court entered on February 26, 2010.

28

                                         1

A.     The only classes of creditors or equity holders receiving or retaining anything under the Joint plan are United Development, Point Center, and the mechanics lien holders.

B.     The proposed sale of the Debtor's property pursuant to Section 6.03 of the Joint Plan did not close in a timely manner. Therefore, the Plan Proponents are proceeding to refinancing the loan of United Funding pursuant to section 6.04 of the Plan.

C.     In furtherance of the consummation of the Joint Plan, the Plan Proponents stipulate and agree that the Joint Plan shall be amended as follows:

1.     Section 6.04(a) of the Joint Plan shall be amended such that the terms set forth in the Secured Promissory Note attached hereto as Exhibit "A" shall replace those terms set forth in Section 6.04(a) of the Joint Plan.

2.     Section 3.01 of the Joint Plan shall be deleted in its entirety and replaced with the following: "Administrative Claims Allowed pursuant to Bankruptcy Code sections 503(b) and 507(a)(2) (and not previously paid), shall be paid in full from the proceeds of the Post-Confirmation Loan. To the extent that the proceeds of the Post-Confirmation Loan are insufficient to pay the allowed Administrative Claims in full, such claims shall be paid from the proceeds of any sale of the Real Property (individual units or the entire property) remaining after the Post-Confirmation Loan has been paid in full and before payment to Point Center or holders of mechanics liens. Administrative Claims against the Debtor, including the applications of court-approved professionals, shall be filed within 180 days following the entry of an order confirming the Plan or such other date as the Court may order."

3.     Section 6.04(d)(i) of the Joint Plan shall be amended to read: "Allowed Administrative Claims shall be paid pursuant to Section 3.01 of the Joint Plan."

4.     A new section 6.04(d)(iv) shall be added which provides: "Up to One Hundred Thirty-Five Thousand dollars ($135,000) of the Post-Confirmation Loan proceeds shall be held in escrow and disbursed on a monthly basis upon the written request of Point Center to be used solely to pay utilities, insurance, marketing, and maintenance costs of the Real Property."

2

1    5.    A new section 6.04(d)(v) shall be added which provides: "Up to $20,000 of the Post-

2    Confirmation Loan proceeds, along with approximately $59,321 on deposit with Chicago Title,

3    shall be disbursed to the California Department of Real Estate as a deposit.

4    6.    Section 5.02(b) of the Joint Plan shall be amended to read: <u>No Sale</u>.  In the event that

5    the sale to the Purchaser does not close, Point Center Financial, <u>or its designee,</u> will receive title to

6    the Real Property subject only to (1) the lien securing the Post-Confirmation Loan, <u>(2) the</u>

7    <u>obligation to pay unpaid Administrative Claims from the proceeds of sale of the Real Property or</u>

8    <u>any portion of the Real Property (after the payment in full of the Post-Confirmation Loan), and (3)</u>

9    the Senior Mechanics' Lien Claims. The relative priority of the liens of Point Center Financial and

10    the Mechanics' Lien claimants will be determined by the Bankruptcy Court as part of the hearing on

11    the confirmation of the Plan. In the event that the Bankruptcy Court determines that the mechanics'

12    liens are junior in all respects to the lien of Point Center Financial, the Real Property will be

13    transferred to Point Center Financial free and clear of all mechanics' liens.

14    7.    Section 6.04(c) of the Joint Plan shall be amended to add the following language at

15    the end of the existing language in that section: "The marketing plan for the units and the Real

16    Property and the sale of any Unit in the Real Property shall be subject to the approval of Point

17    Center and the Senior Mechanic's Lien Holder Committee (as defined in this section) (together, the

18    "Approval Committee").  If the Approval Committee cannot agree on whether to approve the sale

19    of the particular Unit, it shall appoint a third-party neutral to finally determine the matter.  If the

20    Approval Committee cannot come to agreement on the appointment of a third-party neutral, the

21    Court, upon notice and hearing, shall adjudicate the matter.  Upon full and final payment of the

22    Mechanics Lienholders (to the extent adjudicated by the Court to have priority over Point Center),

23    the Approval Committee shall be dissolved."

24    IT IS SO STIPULATED.

25    May 17, 2010                    VANDERHOFF LAW GROUP

26                                        /s/ Alan Vanderhoff
                                    By: _____

27                                        Alan Vanderhoff
                                    Attorneys for MI ARBOLITO, LLC

3

1    May 17, 2010          SOLOMON, GRINDLE, SILVERMAN, SPINELLA, APC

2

              /s/ Pamela LaBruyere

3              By: _____

                Pamela LaBruyere

            Attorneys for POINT CENTER FINANCIAL, INC.

4    May 17, 2010          BAKER & McKENZIE, LLP

5

              /s/ Ali M. M. Mojdehi

6              By: _____

                Ali M. M. Mojdehi

7             Attorneys for OFFICIAL MECHANICS LIENHOLDER
            COMMITTEE

8

9        The following administrative claimants consent to the modifications of the Joint Plan as set

10   forth herein.

11

12   May 17, 2010          VANDERHOFF LAW GROUP

13

              /s/ Alan Vanderhoff

             By: _____

14                Alan Vanderhoff

15   May 17, 2010          MITCHELL & GILLEON

16                  X̸X̸ X̸a̸m̸e̸s̸ X̸C̸ X̸M̸i̸t̸c̸h̸e̸l̸l̸X̸

             By: _____

17                James C. Mitchell

18   May 17, 2010          BAKER & McKENZIE, LLP

19

              /s/ Ali M. M. Mojdehi

20              By: _____

               Ali M. M. Mojdehi

21

22   May 17, 2010          SELTZER CAPLAN MCMAHON VITEK

23

              /s/ Dennis J. Wickham

             By: _____

24                Dennis J. Wickham

25

26

27

# EXHIBIT A

**SECURED PROMISSORY NOTE**

U.S. $6,200,000.00                                                                                      May ___, 2010

       **FOR VALUE RECEIVED, Mi Arbolito, LLC**, a Delaware limited liability company ("***Borrower***") hereby makes and issues this Secured Promissory Note (this "***Note***"), and promises to pay to the order of **3415 Funding, LLC**, a Delaware limited liability company (together with its successors and assigns, "***Lender***"), on or before the Maturity Date, the principal sum of Six Million Two Hundred Thouand Dollars ($6,200,000), together with accrued, unpaid interest thereon, and all other amounts due to Lender hereunder.  As provided in the PCL Order (i) the Loan shall constitute, and Lender shall have therefor, a Superpriority Claim and (ii) the Loan and all other Obligations arising under this Note and the Loan Documents shall be secured by automatically perfected security interests and Liens prior in right to, and shall prime, all previously or presently existing Liens of security interests in and to the Property and the Collateral pursuant to Sections 364(c)(2) and 364(d) of the Bankruptcy Code, except for California *ad valorem* real estate taxes for 2010 and all subsequent calendar years and covenants, deed restrictions, equitable servitudes and easements in and to the Poperty. The Court, pursuant to the PCL Order, has found that the extension of credit and making of the PCL Loan by Lender to the Borrower is being made in good faith and, therefore, Lender shall be entitled to the full protections of 11 U.S.C. §364(e) and shall be made effective immediately without any stay of the effect of the PCL Order so as to permit immediate funding within the provisions and protections of 11 U.S.C. § 364(e).

This Note is subject to the following terms:

       1.      <u>Certain Definitions</u>.  Certain capitalized terms which are defined in the text of this Note shall have the respective meanings given to such terms herein.  The following initially or fully capitalized terms shall have the following meanings:

       "***Business Day***" means any day other than a Saturday, Sunday, or other federal banking holiday.

       "***Brokers' Commission***" means a commission of One Hundred Twenty Thousand Dollars ($120,000) which shall be paid to Lender's brokers and payable from the proceeds of the Loan concurrently with funding and disbursement through the Escrow as instructed by Lender.

       "***Collateral***" means all of Borrower's right, title and interest in and to all of its personal property, whether now owned or hereafter acquired, located or used in conjunction with the Property, and including, without limitation, all full and partial interests in the following:

       (i)      all equipment, inventory, materials, computer software and records, goods, and other personal property, and all documents and receipts covering such property, and all licenses and permits used or held for use in connection with such property;

       (ii)      all contract rights and other general intangibles, including, without limitation, all contract and other rights to receive proceeds and reimbursements related to the Property or the development thereof, and all license agreements; and

       (iii)      all interest in the proceeds of any sale or disposition of any of the foregoing, and in and to any and all money, documents, instruments, securities, or accounts owned or belonging thereto.

       "***Deed of Trust***" shall mean the Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing recorded or to be recorded in the real property records of San Diego County, California, naming Borrower as the grantor and Lender as the beneficiary thereunder, granting Lender a security interest in and a Lien on the Property, subject only to

-1

Permitted Exceptions and being superior in priority over all Liens, as it may be amended, modified, renewed, extended, superseded, or replaced from time to time.

"**Default Rate**" means the lesser of (i) seventeen percent (17.0%), accrued monthly and compounded annually, or (ii) the Highest Lawful Rate.

"**Escrow**" means that escrow account established at Title Company pursuant to the Escrow Agreement.

"**Escrow Agreement**" means that certain Escrow Agreement, dated May __, 2010, by and among Borrower, Lender and Title Company, governing the terms and conditions under which the proceeds of Loan are disbursed.

"**Event of Default**" means the occurance of any of the following events:

(i)    Borrower shall fail to pay any principal or interest due under this Note or any other Obligation when and as the same shall become due and payable pursuant to the terms of the Note or any other instrument evidencing any of the same, whether at the due date thereof or at a date fixed for payment or otherwise; or

(ii)    any representation or warranty made or deemed made by or on behalf of the Borrower in or in connection with this Agreement or any other Loan Document (including the Schedules attached thereto) and any amendments or modifications hereof or waivers hereunder, or in any certificate, report, financial statement or other document submitted to Lender by Borrower, or any representative thereof pursuant to or in connection with this Agreement or any other Loan Document shall prove to be materially incorrect when made or deemed made or submitted; or

(iii)    Borrower shall fail to observe or perform any covenant or agreement contained in this Agreement or any other Loan Document; or

(iv)    Borrower shall fail to comply with the terms of the PCL Order; or

(v)    Any of the following shall occur: (i) any Loan Document shall cease, for any reason, to be in full force and effect; (ii) Borrower shall so assert in writing; or (iii) any Loan Document shall cease to be effective to grant a perfected Lien on any item of collateral described therein with the priority purported to be created thereby; or

(vi)    There occurs any impairment to the value of Collateral which Lender reasonably deems will threaten timely payment in full of the Loan; or

(vii)    The Court grants any superpriority administrative expense claim or Lien or enters any order granting relief from the automatic stay (if not in favor of Lender), except with the express written consent of Lender; or

(viii)    Any mortgage, Lien or security interest purported to be created by any Security Document shall cease to be, or shall be asserted by Borrower not to be, a valid, perfected, first priority (except as otherwise expressly provided in this Agreement or such Security Document) security interest in the Collateral covered thereby.

"**Fixed Rate**" shall mean a fixed interest rate per annum of 12%.

"**Highest Lawful Rate**" means the maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Lender in accordance with the applicable laws of the State of California (or applicable United States federal law, to the extent that it permits

-2

Exhibit A to Stipulation

Lender to contract or charge, take, receive or reserve a greater amount of interest than under California law), taking into account all fees and expenses contracted for, charged, received, taken or reserved by Lender in connection with the transaction relating to this Note and the Loan evidenced hereby or by the other Loan Documents which are treated as interest under applicable law.

"***Indebtedness***" shall mean and include (a) all items which in accordance with Good Accounting Practice would be included on the liability side of a balance sheet on the date as of which indebtedness is to be determined (excluding capital stock, surplus, surplus reserves and deferred credits), (b) guaranties, endorsements and other contingent obligations in respect of indebtedness of others, or any obligations to purchase or otherwise acquire any such indebtedness of others, and (c) indebtedness secured by any mortgage, pledge, security interest or lien existing on property owned subject to or burdened by such mortgage, pledge, security interest or lien whether or not the indebtedness secured thereby shall have been assumed; provided, however, that such term shall not mean or include any indebtedness for which monies sufficient to fully pay and discharge such indebtedness (either on its stated final maturity date or on such earlier date as such indebtedness may be duly called for redemption and payment) are on deposit with a depositary, agency or trustee in trust for the payment of such indebtedness.

"***Lien***" shall mean any mortgage, pledge, hypothecation, assignment, security interest, lien (statutory or otherwise), preference, priority, charge or other encumbrance of any nature, whether voluntary or involuntary, including, without limitation, the interest of any vendor or lessor under any conditional sale agreement, title retention agreement, capital lease or any other lease or arrangement having substantially the same effect as any of the foregoing.

"***Loan***" means the full amount of loan made to Borrower as evidenced by this Note including all principal advanced and accrued interest thereon.

"***Loan Documents***" means this Note, the Deed of Trust, the Security Agreement, the Financing Statement and the Escrow Agreement and any and all other documents evidencing Borrower's obligation to repay the Loan and the security therefor.

"***Loan Expenses***" shall mean all reasonable costs and expenses and reimburse Lender for any and all expenditures of every character incurred or expended from time to time, regardless of whether an Event of Default shall have occurred, in connection with any of the following :

>   (i)    the preparation, negotiation, documentation, closing, renewal, revision, modification, increase, administration, monitoring, review or restructuring of any loan or credit facility represented by or secured by the Loan Documents, including legal, accounting, auditing, architectural, engineering, due diligence, title company, and inspection services and disbursements, or in connection with collecting or attempting to enforce or collect pursuant to any Loan Document;

>   (ii)    Lender's evaluating, monitoring, administering and protecting the Collateral or employing others to do so or to perform due diligence for Lender with respect thereto;

>   (iii)    all out-of-pocket costs and expenses (including, without limitation, the reasonable fees, charges and disbursements of outside counsel and the allocated cost of inside counsel) incurred by Lender in connection with the enforcement or protection of its rights in connection with this Note or any Loan Document; and

>   (iv)    Lender's reasonable expenses creating, perfecting and realizing upon Lender's security interest in, and the Liens on, the Collateral and all costs and expenses relating to Lender's exercising any of its rights and remedies under any Loan Document or at law, including all appraisal fees, consulting fees, filing fees, taxes, brokerage fees

-3

Exhibit A to Stipulation

and commissions, including the Brokers' Commission, title review, report and abstract fees, litigation report fees, UCC search fees, other fees and expenses incident to searches, reports and investigations, escrow fees, attorneys' fees, legal expenses, court costs, other fees and expenses incurred in connection with any complete or partial liquidation of the Collateral and all fees and expenses for any professional services or any operations conducted in connection therewith.  Notwithstanding the foregoing, no right or option granted by Borrower to Lender or otherwise arising pursuant to any provision of any Loan Document shall be deemed to impose or admit a duty on Lender to supervise, monitor or control any aspect of the character or condition of the Collateral or any operations conducted in connection with it for the benefit of Borrower or any other Person other than Lender.

"**Loan Fee**" shall mean One Hundred Eighty Thousand Dollars ($180,000) which shall be paid to Lender from the proceeds of the Loan concurrently with funding and disbursement through the Escrow.

"**Maturity Date**" means the date one (1) year from the date of this Note, which is May ___, 2011.

"**Note**" means this Secured Promissory Note as defined in the introductory paragraph hereof, together with all exhibits and schedules hereto, as it may be amended, modified, renewed, extended, increased, superseded, or replaced from time to time.

"**Obligations**" shall mean all principal of and interest (including, to the greatest extent permitted by applicable law, post-petition interest) on the Loan and all fees, expenses, indemnities and other obligations owing, due or payable at any time by the Borrower to the Lender, or any other Person entitled thereto, under this Agreement, any of the other Loan Documents.

"**PCL Order**" shall mean the order entered by the United States Bankruptcy Court for the Southern District of California on May __, 2010, in the voluntary bankruptcy case of the Borrower filed as Case No.: 08-04553-LT11, authorizing a post-confirmation loan secured by a super-priority lien on the Borrower's real and personal property.

"**Partial Release Payment**" means any payment made by Borrower to Lender in partial repayment of the Loan in connection with the sale of a condominium comprising a portion of the Project and the partial reconveyance of the lien of the Deed of Trust against such condominium as determined pursuant to Section 2(c)(iii) of this Note.

"**Person**" means a corporation, limited liability company, general partnership, limited partnership, trust, or other entity, or any individual.

"**Prepayment Fee**" means the fee owed by Borrower to Lender in connection with any payment of some or all of the principal amount of the Loan prior to the Maturity Date, including any Partial Release Payment.

"**Project**" means that certain fourteen (14) story fourteen (14) unit luxury condominium project located on Property together with all other related improvements and amenities and all work, construction, fixturing and equipping necessary for the completion of same.

"**Property**" means that certain real property located in San Diego County, California, and more particularly described on Exhibit "A"  to the Deed of Trust, which is comprised of a 14-story 14-unit condominium project located at .

"**Security Agreement**" means that certain Security Agreement executed by Borrower in favor of Lender, together with all exhibits and schedules thereto, as it may be amended, modified,

-4

renewed, superseded, or replaced from time to time, whereby Borrower grants to Lender a security interest in the Collateral.

"***Superpriority Claims***" shall mean any debt or other claim arising out of credit obtained or debt incurred by Borrower having priority in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code.

"***Title Company***" initially means Chicago Title Company, or, thereafter, such other title insurance company Lender may select.

"***Unit***" or "***Units***" shall in the singular mean any one of, and in the plural more than one of, the individual condominium units which comprise a portion of the Project and created pursuant to the Declaration of Condominium filed or to be filed of record and creating a condominium regime of ownership with respect to the Project.

2.      Interest; Payments.

(a)      Interest Rate.  The outstanding principal amount of the Loan, as evidenced by this Note, shall bear interest on each day outstanding at the Fixed Rate, unless the Default Rate shall apply.  Subject to the other provisions of this Note, the terms and conditions of the Loan Documents, and the PCL Order, upon the occurrence and during the continuation of an Event of Default, the outstanding principal amount of this Note shall, at Lender's option, automatically and without the necessity of notice, bear interest from the date of such Event of Default at the Default Rate, until all such delinquent amounts are paid and such breach or Event of Default has been cured to Lender's satisfaction as confirmed by Lender's execution of a written agreement specifically acknowledging and describing the Event of Default so cured, and or waived by Lender as confirmed by Lender's execution of a written agreement specifically acknowledging and describing the Event of Default so waived.  All computations of interest and fees hereunder shall be made on the basis of a month consisting of 30 days and a year consisting of 360 days and the actual number of days (including the first day, but excluding the last day) elapsed.

(b)      Interest and Principal Payments.  Borrower promises to pay to Lender the outstanding principal balance of this Note, together with all accrued, unpaid interest thereon, unpaid Loan Expenses and other unpaid amounts due hereunder, on or prior to the Maturity Date.

(c)      Partial Release Payments. Prior to the maturity of the Loan, by acceleration or otherwise, upon Borrower's written request and satisfaction of all of the conditions precedent set forth below, Lender agrees to issue a partial reconveyance from the lien of the Deed of Trust of any completed Unit within the Project upon sale of such Unit to a third party unrelated to Borrower or any party affiliated with Borrower at the fair market value of such Unit as determined in a bona fide sale negotiated at arm's length:

> (i)      As of the date of such reconveyance, no Event of Default under this Note or the Loan Docuemnts shall have occurred, and no event which, with notice or the passage of time or both, would become an Event of Default, shall have occurred and be continuing, except as provided in Section 4(b) of this Note.

> (ii)      Lender shall have approved the gross sales price of the Unit (the "***Gross Sales Price***"), such approval not to be unreasonably withheld, conditioned or delayed, or pursuant to such schedule of minimum Gross Sales Prices as Lender and Borrower may mutually agree in writing;

> (iii)      Lender shall have received, or shall receive concurrently with the delivery of such reconveyance and the closing of such sale, in immediately available

-5

funds, an amount that is equal to one hundred percent (100%) of the sales proceeds realized upon sale of such Unit (i.e., the Gross Sales Price minus real estate sales commissions payable to the real estate brokers representing buyer and seller of not more than 6% of the Gross Sales Price, any transfer taxes on the deed of conveyance, the title premium paid in connection with such closing, reasonable charges of the closing or title agent, and other costs ordinarily and customarily paid by sellers of condominium units similar to the Units in the Project in arms length real property sale transactions in San Diego County, California.

(iv)     If requested by Lender, the Title Insurer shall have committed to issue to Lender, a CLTA 111 Title Insurance endorsement insuring the continued validity and priority of the Deed of Trust, together with any other endorsements to the Title Insurance reasonably required by Lender.

(v)     Lender shall have received, or shall receive concurrently with the delivery of such reconveyance and the closing of such sale, in immediately available funds, all escrow, closing and recording costs, the cost of preparing and delivering the partial reconveyance, the cost of any title insurance endorsements that Lender may require under Paragraph 3, above, and any sums then due and payable under the Loan Documents.

Neither Lender's acceptance of any payment nor its issuance of the partial reconveyance shall affect Borrower's liability to repay all amounts owing under this Note, the Loan Documents or the lien of the Deed of Trust encumbering the remaining portions of the Property not reconveyed.

(d)     Fee for Prepayment or Acceleration.  Notwithstanding anything contained herein to the contrary, in the event that Borrower shall, prior to the Maturity Date, repay or become obligated to repay the Loan, in whole or in part, including any Partial Release Payment or any amount due as a result of acceleration of this Note upon the occurrence of an Event of Default, in addition to such payment, Borrower shall be ogligated to pay, and shall pay, or become obligated to pay, to Lender concurrent with such payment or occurrence, a fee in an amount equal to the interest that would have accrued at the Fixed Rate on such prepaid or accelerated amount, including any Partial Release Payment, between the date of such payment or occurrence and the Maturity Date. Borrower waives any right, under California Civil Code Section 2954.10 or otherwise, to prepay any portion of the outstanding principal balance under this Note without payment of the Prepayment Fee provided in this subsection (d).  The Borrower acknowledges that prepayment of the principal balance as provided herein may result in the Lender incurring additional losses, costs, expenses and liabilities, including lost revenue and lost profits.  The Borrower therefore agrees to pay the Prepayment Fee to the extent described above if any principal amount is prepaid, whether voluntarily or by reason of acceleration, including acceleration upon any sale or other transfer of any interest in the Premises.  The Borrower further agrees that the Lender's willingness to offer the interest rate described above to the Borrower is sufficient and independent consideration, given individual weight by the Lender, for this waiver. The Borrower understands that the Lender would not offer such an interest rate to the Borrower absent this waiver.

(e)     Taxes. Any and all payments by the Borrower under this Note shall be made, in accordance with the terms hereof, free and clear of and without deduction for any and all present or future taxes, levies, imposts, deductions, charges or withholdings, and all liabilities with respect thereto, other than net income and franchise taxes imposed on the Lender by the United States or by the jurisdiction under the laws of which Borrower is organized or does business or in which its principal office or its applicable lending office is located, or any political subdivision or taxing authority thereof (all such nonexcluded taxes, levies, imposts, deductions, charges, withholdings and liabilities being hereinafter referred to as "**Taxes**").  If the Borrower shall be required by law to deduct any Taxes from or in respect of any sum payable hereunder or under any Note to Lender, (i) the sum payable shall be increased as may be necessary so that after making all required

-6

deductions (including deductions applicable to additional sums payable under this Section), the Lender receives an amount equal to the sum it would have received had no such deductions been made, (ii) the Borrower will make such deductions, (iii) the Borrower will pay the full amount deducted to the relevant taxation authority or other authority in accordance with applicable law and (iv) the Borrower will deliver to the Lender evidence of such payment.

3.      Terms and Conditions of Payment.

        (a)      Application of Payments.  All payments on this Note shall be applied first, to unpaid Loan Expenses due hereunder, next, to unpaid accrued interest, and last, to principal outstanding under this Note.  Notwithstanding the foregoing sentence, subject to the terms and conditions of the Loan Documents, if any Event of Default occurs and is existing under this Note or any other Loan Document, Lender shall have the right to apply payments toward amounts due under this Note as Lender determines in its sole discretion.

        (b)      General.  All amounts are payable to Lender in lawful money of the United States of America at the address for Lender provided in or pursuant to Section 11.  Borrower shall make each payment which it owes under this Note and the other Loan Documents to Lender in full and in lawful money of the United States, without set-off, deduction or counterclaim.  Under no circumstance may Borrower offset any amount owed by Borrower to Lender under this Note with an amount owed by Lender to Borrower under any other arrangement.  All payments shall be made by cashier's check or wire transfer of immediately available funds.  Should any such payment become due and payable on a day other than a Business Day, the date for such payment shall be extended to the next succeeding Business Day, and, in the case of a required payment of principal, interest or Loan Expenses or other amounts then due, interest shall accrue and be payable on such amount for the period of such extension.  Each such payment must be received by Lender not later than 2:00 p.m. Pacific Time on the date such payment becomes due and payable.  Any payment received by Lender after such time will be deemed to have been made on the next succeeding Business Day.

4.      Event of Default.

        (a)      Upon the occurrence of an Event of Default, Lender shall have all rights and remedies as set forth in the Loan Documents which rights and remedies include, without limitation, the right to accelerate this Note and to (i) declare the principal of this Note together with all accrued and unpaid interest on the unpaid principal balance, and Loan Expenses and other amounts due to Lender under this Note or the other Loan Documents, to be due and payable immediately, and, subject to the terms and conditions of the Loan Documents, the same shall become and be due and payable, without notices, demands for payment, presentations for payment, notices of payment default, notices of intention to accelerate maturity, protest and notice of protest, and any other notices of any kind, all of which are expressly waived by Borrower and any and all sureties, guarantors and endorsers of this Note, and/or (ii) exercise any or all of its rights under all or any of the Loan Documents, and/or (iii) refuse to make any further advance of funds pursuant to the Loan Documents, and/or (iv) exercise any or all other rights and remedies available to Lender at law and at equity, including, without limitation, such rights existing under the Uniform Commercial Code.  No delay on the part of Lender in exercising any power under this Note shall operate as a waiver of such power or right nor shall any single or partial exercise of any power or right preclude further exercise of that power or right.  If this Note is placed in the hands of an attorney for collection after an Event of Default or failure to pay under this Note, or if all or any part of the indebtedness represented hereby is proved, established or collected in any court or in any bankruptcy, receivership, debtor relief, probate or other court proceedings, Borrower and all endorsers, sureties and guarantors of this Note, jointly and severally, agree to pay reasonable attorneys' fees and collection costs to Lender in addition to the principal and interest payable under this Note.

-7

Exhibit A to Stipulation

(b)        Notwithstanding any other provision of this Note or the Loan Documents, if an Event of Default occurs solely due to Borrower's failure to pay the outstanding balance of principal and interest on this Note on or before the Maturity Date, Lender agrees to forbear from filing a Notice of Default under California Civil Code Section 2924 for a period of sixty (60) days following such Event of Default, provided that (i) the Default Rate shall apply, and (ii) the provisions of Section 2(c) of this Note shall remain in force and effect during such period of forebearance. The provisions of this subsection (b) shall not apply to an Event of Default caused by any other reason.

5.        Usury Laws.  Notwithstanding anything to the contrary contained in this Note or any other Loan Document it is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply strictly with the applicable California law governing the maximum rate or amount of interest payable on the indebtedness evidenced hereby, or applicable United States federal law to the extent that such law permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under California law.  A principal of Lender is a licensed California real estate broker and Borrower and Lender agree that has been been made or arranged by a licensed California real estate broker and exempt from California usury laws pursuant to California Civil Code Section 1916.1. If the applicable law is ever judicially interpreted so as to render usurious any amount contracted for, charged, taken, reserved or received in respect of the indebtedness evidenced hereby, including by reason of the acceleration of the maturity or the prepayment thereof, then it is the express intent of Borrower and Lender that all amounts charged in excess of the Highest Lawful Rate shall be automatically canceled, *ab initio,* and all amounts in excess of the Highest Lawful Rate theretofore collected by Lender shall be credited on the principal balance of the indebtedness evidenced hereby (or, if the indebtedness evidenced hereby has been or would thereby be paid in full, refunded to Borrower), and the provisions of the Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable laws, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if the Note has been paid in full before the end of the stated term hereof, then Borrower and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Borrower that interest was received in an amount in excess of the Highest Lawful Rate, either credit such excess interest against the indebtedness evidenced hereby then owing by Borrower to Lender and/or refund such excess interest to Borrower.  Borrower hereby agree that as a condition precedent to any claim seeking usury penalties against Lender, Borrower will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against the indebtedness evidenced hereby then owing by Borrower to Lender. All sums contracted for, charged, taken, reserved or received by Lender for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, prorated, allocated or spread, using the actuarial method, throughout the stated term of the Note (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of the indebtedness evidenced hereby does not exceed the Highest Lawful Rate from time to time in effect and applicable to the indebtedness evidenced hereby for so long as the Loan is outstanding. The terms and provisions of this paragraph shall control and supersede every other term, covenant or provision contained herein, in any of the other Loan Documents or in any other document or instrument pertaining to the Loan.

6.        Indemnity; Release.  Borrower agrees to indemnify Lender, upon demand, from and against any and all liabilities, obligations, claims, losses, damages, penalties, fines, actions, judgments, suits, settlements, costs, expenses or disbursements (including reasonable, documented fees of attorneys, accountants, experts and advisors) of any kind or nature whatsoever, now existing (in this section, collectively called "***Liabilities and Costs***") to the extent actually imposed on, incurred by, or asserted against Lender in its capacity as lender hereunder growing out of, resulting from or in any other way associated with (a) this Note and the other Loan Documents or any of the transactions and events (including the enforcement or defense thereof) at any time associated therewith or contemplated therein, ,

-8

Exhibit A to Stipulation

and (b) any use, handling, storage, transportation, or disposal of hazardous or toxic materials on or about the Property.

**THE FOREGOING INDEMNIFICATION SHALL APPLY WHETHER OR NOT SUCH LIABILITIES AND COSTS ARE IN ANY WAY OR TO ANY EXTENT OWED IN WHOLE OR IN PART UNDER ANY CLAIM OR THEORY OF STRICT LIABILITY, OR ARE CAUSED IN WHOLE OR IN PART, BY ANY NEGLIGENT ACT OR OMISSION OF ANY KIND BY LENDER, EXCLUDING GROSS NEGLIGENCE OR WILFILL MISCONDUCT BY LENDER;**

provided only that Lender shall not be entitled under this section to receive indemnification for that portion, if any, of any Liabilities and Costs which is proximately caused by its own individual gross negligence or willful misconduct, or by the gross negligence or willful misconduct of its agent, employees, contractors or suppliers, as determined in a final judgment.  If any Person (including Borrower) ever alleges such gross negligence or willful misconduct by Lender, the indemnification provided for in this section shall nonetheless be paid upon demand, subject to later adjustment or reimbursement, until such time as a court of competent jurisdiction enters a final judgment as to the extent and effect of the alleged gross negligence or willful misconduct.  As used in this section, the term "Lender" shall refer not only to the Person designated as such in this Note but also to each partner, director, officer, attorney, employee, representative and affiliate of such Person.

**FOR GOOD AND VALUABLE CONSIDERATION SET FORTH HEREIN, INCLUDING THE PROMISES, AGREEMENTS, COVENANTS, REPRESENTATIONS AND OBLIGATIONS SET FORTH IN THIS NOTE AND THE OTHER LOAN DOCUMENTS, BORROWER AND EACH BORROWER-RELATED PARTY HEREBY RELEASES AND FOREVER DISCHARGES, AND COVENANTS NOT TO SUE OR FILE ANY CHARGES OR CLAIMS AGAINST, LENDER FOR ANY AND ALL EXISTING CLAIMS, DEMANDS AND CAUSES OF ACTION, IN CONTRACT OR IN TORT, AT LAW OR IN EQUITY, KNOWN OR UNKNOWN, PENDING OR THREATENED, FOR ALL EXISTING DAMAGES AND REMEDIES ARISING OUT OF OR IN ANY WAY ASSOCIATED WITH THIS NOTE AND THE OTHER LOAN DOCUMENTS AND THE LOAN MADE PURSUANT HERETO AND THERETO.**

7.      <u>No Presumption</u>.  The Loan Documents have been reviewed by counsel for Borrower.  Borrower represents and warrants to Lender that it has read and fully understand the terms and provisions hereof, have had an opportunity to review this Note and the other Loan Documents with legal counsel and have executed this Note and the other Loan Documents based on their own judgment and advice of counsel.  If an ambiguity or question of intent or interpretation arises, the Loan Documents will be construed as if drafted jointly by Borrower and Lender and no presumption or burden of proof will arise favoring or disfavoring any party because of authorship of any provision of the Loan Documents.

8.      <u>Set-Off</u>.  Borrower hereby gives and confirms to Lender a right of set-off of all moneys, securities and other property of Borrower (whether special, general or limited) and the proceeds thereof, now or hereafter delivered to remain with or in transit in any manner to Lender, its correspondents or its agents from or for Borrower, whether for safekeeping, custody, pledge, transmission, collection or otherwise or coming into possession of Lender in any way, and also, of all other liabilities and obligations now or hereafter owed by Borrower to Lender, contracted with or acquired by Lender, whether joint, several, absolute, contingent, secured, unsecured, matured or unmatured, hereby authorizing Lender at any time after an Event of Default has occurred and is continuing, without prior notice, to apply such balances, credits of claims or any part thereof, to such liabilities in such amounts as it may select, whether contingent, unmatured or otherwise, and whether any collateral security therefor is deemed adequate or not.  The rights described herein shall be in addition to any collateral security described in any separate agreement executed by Borrower.

9.      <u>Payment of Lender's Initial Loan Expenses</u>. The Borrower shall pay from the proceeds of the Loan, payable directly from Escrow, (i) all of Lender's Loan Expenses incurred in connection with the preparation and administration of this Note and the other Loan Documents and any amendments, modifications or waivers thereof, (ii) the Brokers' Commission, (iii) the Loan Fee, and (iv) all charges of the Title Company.

-9

10.    <u>No Third Party Beneficiaries</u>. The benefits of this Note will not inure to any third party. Notwithstanding anything contained in the Loan Documents or any conduct or course of conduct by Borrower or Lender, before or after the date of this Note, this Note will not be construed as creating any rights, claims, or causes of action against Lender, or any of its officers, directors, agents or employees, in favor of any contractor, subcontractor, supplier of labor or materials, or any of their respective creditors, or any other person or entity other than Borrower.  Without limiting the generality of the foregoing, Advances made to any Person other than Borrower (including, without limitation, any contractor, subcontractor or supplier of labor or materials) will not be deemed recognition by Lender of any third-party beneficiary status claimed by any such person or entity.

11.    <u>Cumulative Remedies</u>.  All rights and remedies that Lender is afforded by reason of the Loan Documents are separate and cumulative with respect to Borrower or any of them and otherwise and may be pursued separately, successively, or concurrently, as Lender deems advisable.  In addition, all such rights and remedies are non-exclusive and shall in no way limit or prejudice Lender's ability to pursue any other legal or equitable rights or remedies that may be available to Lender.

12.    <u>Notice</u>.  Any notice, request or other communication required or permitted to be given hereunder shall be given in writing by any of the following methods:  (i) registered or certified mail, (ii) facsimile, (iii) delivered personally by courier service, or (iv) delivered by nationally recognized overnight delivery service; in each case, addressed to the respective parties as follows:

|  |  |
|---|---|
| To the Borrower: | Mi Arbolito, LLC,<br>Symphony Towers 1740<br>750 B Street<br>San Diego, California 92101 |
| With a copy to: | Vanderhoff Law Group<br>750 B Street, Suite 1620<br>San Diego, California 92101<br>Attention: Alan Vanderhoff, Esq. |
| and | Seltzer Caplan McMahon Vitek<br>750 B Street, Suite 2100<br>San Diego, California 92101<br>Attention: Joseph P. Martinez, Esq. |
| With a copy to: | Point Center Financial<br>7 Argonaut<br>Aliso Viejo, CA 92656-1423<br>Attention: V. Alan Bergfeld, Esq, |
| With a copy to: | Pamela LaBruyere, Esq.<br>Solomon, Grindle, Silverman & Wintringer, APC<br>12651 High Bluff Drive, Suite 300<br>San Diego, CA 92130 |
| To the Lender: | 3415 Funding, LLC<br>c/o Hogan Guiney Dick LLP<br>225 Broadway, Suite, 1900<br>San Diego, California 92101<br>Attention: David L. Dick |

Each notice or other communication will be treated as effective and as having been given and received (i) if sent by certified mail, or registered mail, three (3) Business Days after deposit in a regularly maintained receptacle for deposit of United States mail, (ii) if sent by facsimile, upon written or electronic confirmation

-10

of facsimile transfer, (iii) if delivered by courier, upon written or electronic confirmation of delivery from such service, or (iv) if sent by nationally-recognized overnight delivery service, upon written or electronic confirmation of delivery from such service.  Borrower's and the Borrower-Related Parties' respective addresses for notice may be changed at any time and from time to time, but only after thirty (30) days' advance written notice to Lender and shall be the most recent such address furnished in writing by them to Lender.  Lender's address for notice may be changed at any time and from time to time, but only after written notice to Borrower and the Borrower-Related Parties shall be the most recent such address furnished in writing by Lender to them.  Actual notice, however and from whomever given or received, shall always be effective when received.

13.    <u>Books and Records</u>. Borrower will keep proper books of record and account in which full, true and correct entries shall be made of all dealings and transactions in relation to its business and activities to the extent necessary to prepare the financial statements of Borrower in conformity with GAAP.

14.    <u>Enforcement by Lender</u>.  Lender shall have the right at all times to enforce the provisions of this Note and the other Loan Documents in strict accordance with their respective terms, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times.  The failure of Lender at any time or times to enforce its rights under such provisions, strictly in accordance with the same, shall not be construed as having created a custom or in any way or manner modified or waived the same.

15**.**    **<u>CHOICE OF LAW</u>.  EXCEPT TO THE EXTENT THAT THE VALIDITY OR PERFECTION OF SECURITY INTERESTS OR REMEDIES IN RESPECT OF ANY PARTICULAR COLLATERAL IS GOVERNED BY THE LAWS OF A JURISDICTION OTHER THAN THE STATE OF CALIFORNIA, THIS NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO ITS CONFLICTS OF LAWS PROVISIONS.**

16.    **<u>JURISDICTION; VENUE</u>.  BORROWER AND EACH BORROWER-RELATED PARTY IRREVOCABLY AGREE THAT ANY LEGAL PROCEEDING IN RESPECT OF THIS NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE BROUGHT IN THE SUPERIOR COURTS OF SAN DIEGO COUNTY, CALIFORNIA OR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION (THE "SPECIFIED COURTS").  BORROWER HEREBY IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE SPECIFIED COURTS. BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE THAT THE LAYING OF VENUE OF ANY SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH SPECIFIED COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND HEREBY IRREVOCABLY AGREE TO A TRANSFER OF ALL SUCH PROCEEDINGS TO THE SPECIFIED COURTS.  NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY JURISDICTION OR TO SERVE PROCESS IN ANY MANNER PERMITTED BY APPLICABLE LAW.**

17.    <u>Severability</u>.  If any provision of this Note or any other Loan Document shall be held invalid under any applicable laws, then all other terms and provisions of this Note and the Loan Documents shall nevertheless remain effective and shall be enforced to the fullest extent permitted by applicable law.

18.    <u>Amendments; Waivers</u>.  No amendment or waiver of any provision of this Note nor consent to any departure herefrom, shall in any event be effective unless the same shall be in writing and signed by Lender and the affected party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

19.    <u>Binding Effect; Assignment</u>. This Note and the other Loan Documents shall be binding on Borrower and its successors and assigns, including, without limitation, any receiver, trustee or debtor in

-11

possession of or for Borrower, and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not be entitled to transfer or assign its obligations under this Note and the other Loan Documents in whole or in part without the prior written consent of Lender. This Note and the other Loan Documents are freely assignable and transferable by Lender without the consent of Borrower.  Should the status, composition, structure or name of Borrower change, this Note and the other Loan Documents shall continue to be binding upon such Person and also cover such Person under the new status composition, structure or name according to the terms hereof and thereof.

20.    Time of the Essence.  Time is of the essence in this Note and the Loan Documents.

21.    Captions; Number or Gender of Words.    The captions in this Note are for the convenience of reference only and shall not limit or otherwise affect any of the terms or provisions hereof. Except where the context indicates otherwise, words in the singular number will include the plural and words in the masculine gender will include the feminine and neutral, and vice versa, when they should so apply.

**22.    WAIVER OF JURY TRIAL, PUNITIVE DAMAGES, ETC.  BORROWER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY (A) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR THE LOAN DOCUMENTS OR ANY TRANSACTION CONTEMPLATED HEREBY OR THEREBY OR ASSOCIATED HEREWITH OR THEREWITH, BEFORE OR AFTER MATURITY OF THIS NOTE; (B) WAIVE, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT SUCH PARTY MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION ANY "SPECIAL DAMAGES", AS DEFINED BELOW, (C) CERTIFY THAT NO PARTY HERETO NOR ANY REPRESENTATIVE OF LENDER OR COUNSEL FOR ANY PARTY HERETO HAS REPRESENTED, EXPRESSLY OR OTHERWISE, OR IMPLIED THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS, AND (D) ACKNOWLEDGE THAT LENDER HAS BEEN INDUCED TO ENTER INTO THIS NOTE AND THE OTHER LOAN DOCUMENTS AND THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY BASED UPON, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS CONTAINED IN THIS SECTION. AS USED IN THIS SECTION, "SPECIAL DAMAGES" INCLUDES ALL SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES (REGARDLESS OF HOW NAMED), BUT DOES NOT INCLUDE ANY PAYMENTS OR FUNDS WHICH ANY PARTY HERETO HAS EXPRESSLY PROMISED TO PAY OR DELIVER TO ANY OTHER PARTY HERETO.**

**23.    ENTIRE AGREEMENT.    THIS NOTE AND THE OTHER LOAN DOCUMENTS TOGETHER CONSTITUTE THE ENTIRE AGREEMENT AMONG THE PARTIES CONCERNING THE SUBJECT MATTER HEREOF, AND ALL PRIOR DISCUSSIONS, AGREEMENTS AND STATEMENTS, WHETHER ORAL OR WRITTEN, ARE MERGED INTO THIS NOTE AND THE OTHER LOAN DOCUMENTS.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES AND THIS NOTE AND THE OTHER LOAN DOCUMENTS MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES**.

*[The remainder of this page is left blank intentionally. Signatures appear on the following page.]*

-12

Exhibit A to Stipulation

This Note has been executed on this the _____ day of May 2010, effective for all purposes as of the Effective Date.

**Borrower**:

MI ARBOLITO, LLC,
a Delaware limited liability company

By:      1700 Investors, LLC,
              a Delaware limited liability company,
              its Manager


By: _____
     Joseph P. Martinez, a Member


By: _____
     Anthony G. Cutri, a Member

Signature Page to Secured Promissory Note

Exhibit A to Stipulation